UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CURVES INTERNATIONAL, INC.,              :
  a Texas corporation,                          :
                                                  :
              Plaintiff,                          :
                                                  :
              v.                              :          C.A. No.  07-CV-6404 (CLB)
                                                  :
STEPHANIE O'CALLAGHAN,                    :
  a Resident of New York,                      :
                                                  :
              Defendant.                        :
------------------------------------------------------------x

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

      This is an action for breach of contract, trademark infringement, and false designation of origin and misrepresentation arising from Defendant's failure to comply with post-termination obligations under her franchise agreement with Curves International, Inc. ("Curves").  Plaintiff seeks to enforce a post-termination covenant not to compete contained in the Franchise Agreement executed by Defendant, a former Curves franchisee who, despite termination of her Ardsley, New York, Curves franchise, continues to operate a competing fitness center at the same location.  Plaintiff seeks monetary, injunctive, and other relief against Defendant for the reasons set forth below.

## PARTIES

      1.      Plaintiff Curves is a corporation organized and existing under the laws of Texas with its principal place of business located at 100 Ritchie Road, Waco, Texas 76712.  Curves owns and licenses the CURVES® trademarks and other trademarks and service marks that are licensed for use in CURVES® franchises.  Curves is the franchisor of the CURVES® franchise system.

2. Defendant Stephanie O'Callaghan is a natural person and, upon information and belief, is a citizen and resident of the State of New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are completely diverse. This Court has *in personam* jurisdiction over Defendant because she conducts business in this District and the events giving rise to Plaintiff's claims occurred in this District. Venue in this Court is proper under 28 U.S.C. § 1391.

## BACKGROUND FACTS

### The CURVES® Marks/The Franchise Agreement

4. Curves owns the federally-registered CURVES® trademarks, service marks, logos and derivations thereof (the "Marks") as well as the distinctive and well-known CURVES® system, which sells fitness and weight loss services and products to the public under the CURVES® Marks.

5. Curves has advertised and promoted the CURVES® Marks throughout the United States, including in the State of New York. Curves and its predecessors have spent substantial amounts of time and money to maintain and improve the CURVES® franchise system. The substantial efforts of Curves and its predecessors include, but are not limited to: (1) the maintenance of service and product quality; (2) the development of methods of maintaining quality and uniformity of services and products sold by its franchise operators throughout the United States; (3) the development of uniform designs and markings for equipment provided and for packages in which products are sold to consumers; (4) the licensing of the use of other

2

trademarks of Curves and other proprietary information to CURVES® franchisees; and (5) the training and education of franchisees and facility operators in the proper operation of a CURVES® franchise. As a result of the efforts and expenditures of Curves, the CURVES® Marks have become associated in the minds of consumers with uniform services, goods, and equipment of consistently high quality, provided only in clean and attractive facilities, and operated by persons following Curves' approved sales and operating methods and procedures.

6. Defendant Stephanie O'Callaghan entered into a franchise agreement with Curves dated July 6, 2000 ("Franchise Agreement"), whereby Defendant received the license and right to operate a CURVES® franchise using the CURVES® trademarks and business system, in a limited area defined as the city limits of Dobbs Ferry, Hastings-on-Hudson, Irvington, and Ardsley, New York, as specifically identified in a March 27, 2001 Addendum to the Franchise Agreement. Within that area, Defendant owned and operated a CURVES® franchise for several years at 875 Saw Mill River Road, Ardsley, New York 10502.

7. Following execution of the Franchise Agreement, Defendant received extensive training and support from Curves. Specifically, Defendant received training in exercise physiology, nutritional counseling, marketing, sales, business systems, and instructions on the use of equipment. In addition, as part of her training, Defendant received a Confidential Operations Manual, marketing and advertising materials, and business forms and other materials, none of which is made available to anyone who is not part of the CURVES® business system. Defendant also had access to Curves' telephone support and computer-based learning system. Defendant further had the opportunity to attend regional and national meetings for additional training, and received periodic updates on new products, programs, and procedures. As agreed

to by Defendant in Article 4(C) of the Franchise Agreement, the information received by Defendant is confidential, proprietary, and competitively sensitive.

8. Article 5(L) of the Franchise Agreement permitted Defendant to sell only Curves-brand fitness and weight loss services and products, or other services and products approved by Curves.

9. Article 6(A) of the Franchise Agreement makes it clear that the CURVES® Marks belong solely to Curves and that Defendant's license to use the Marks was entirely dependent on Defendant's compliance with the terms of the Franchise Agreement. Moreover, Article 6(A) provides that any goodwill established by Defendant's use of Curves' Marks inures to the benefit of Curves, as the exclusive owner of those Marks.

10. In return for her right to display the Marks and participate in Curves' franchise system, Defendant agreed to pay a weekly royalty fee to Curves. Pursuant to Article 3(B) of the Franchise Agreement, Defendant agreed to pay a monthly royalty fee of $395.00 during the first year of the term of the Franchise Agreement. After the first year, Defendant agreed to pay "throughout the remaining Term of this Agreement" a monthly royalty fee as determined based on an equation set forth in Article 3(B) of the Franchise Agreement, but not less than $395.00.

11. Pursuant to Article 3(C) of the Franchise Agreement, Defendant agreed to pay "[d]uring the Term of this Agreement" a monthly advertising fee as determined based on an equation set forth in Article 3(C) of the Franchise Agreement, but not less than $195.00.

12. Article 2 of the Franchise Agreement provides that the Agreement was for a term of ten years, or until July 6, 2010, with an option for renewal.

13. Article 11 of the Franchise Agreement establishes a procedure whereby Curves could terminate Defendant's franchise rights should Defendant fail to comply with her

4

contractual obligations. Pursuant to Article 11, Curves could terminate the Franchise Agreement after notice and opportunity to cure, if Defendant fails, refuses, or neglects to pay promptly any monies owing to Curves or its subsidiaries or affiliates. That Article further provides that Curves could terminate the Agreement if Defendant failed to comply with Curves' operating procedures and standards.

## Post-Termination Obligations

14. Upon the termination of her franchise rights, Defendant agreed to remove immediately from the premises of her facility all of Curves' Marks. Article 12(A) of the Franchise Agreement provides:

> Immediately upon termination, expiration or non-renewal of this Agreement for any reason, all rights granted to Franchisee shall terminate and Franchisee shall thereafter . . . cease to use the Trademark or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan or symbol used in connection with the Franchise, including any reproduction, counterfeit copy, variation, emulation, or colorable imitation thereof which is likely to cause confusion or mistake or deceive the public; and . . . return to Franchisor, at Franchisee's expense, all printed material furnished to Franchisee, including, without limitation, all Franchisor's manuals, advertising material, stationery and printed forms and all other matters relating to the operation of the Franchise and/or bearing the Trademark.

15. Pursuant to Article 12(A), Defendant also agreed to modify and alter the appearance of her facility to distinguish that facility from the appearance of a licensed CURVES® facility. Defendant further agreed to assign and deliver all check drafts for all memberships to Curves, and any past or present membership lists or leads.

16. Defendant also accepted a reasonable post-termination covenant against competition as part of the Franchise Agreement. Pursuant to Article 9(B), Defendant agreed that:

> Franchisee acknowledges that the names CURVES FOR WOMEN®, QUICKFIT, and THE HEAVIN FORMULA, the business reputation associated with such

names, the methods and techniques employed by Franchisor, the training and instruction to be provided under and pursuant to this Agreement, the knowledge of the services and methods of Franchisor, and the opportunities, associations and experience established and acquired by Franchisee under and pursuant to this Agreement and as a member of the license system, are of considerable value. In consideration thereof, Franchisee therefore covenants and agrees that, except for any interest which Franchisee has in a competitive business on the effective date of this Agreement, by its signature hereinbelow, specifically consents, Franchisee shall not, directly or indirectly, as a proprietor, partner, investor, shareholder, member, director, officer, employer, employee, principal, agent, adviser, franchisor, franchisee, consultant or in any other individual or representative capacity or otherwise for a period of three (3) years immediately following the later of the expiration, termination or non-renewal of this Agreement for any reason or the date on which Franchisee actually ceases operation:

1. engage in or participate in or derive any benefit from any similar business to that licensed and established under and pursuant to this Agreement within forty (40) miles of the area listed on "Schedule A" herein, without Franchisor's prior written consent. If Franchisor grants permission for Franchisee to engage in the operation of a similar business as set forth above, Franchisee agrees that Franchisee will pay Franchisor a Royalty Fee for a period of twenty-four (24) months in accordance with Section 3.C. herein in addition to any other sums due and owing to Franchisor; or

2. employ or seek to employ any person who is employed by Franchisor or any other Franchisee, or otherwise induce or seek to induce such person to leave his or her employment; or

3. interfere or attempt to interfere with any of the business relationships and/or advantages of Franchisor or any other Franchisee; or

4. use any confidential information from Franchisor's manuals or system in any manner which would be damaging or derogatory or hinder the relationship of Franchisor with its other Franchisees or the relationship of any other Franchisee with its customers; or

5. use the Trademark, or any form of the Trademark, any other mark owned by Franchisor at the time of expiration, termination or non-renewal of this Agreement, or any confidential information from Franchisor's manuals or system in any manner to engage in or participate in or derive any benefit from any similar business to that licensed and established under and pursuant to this Agreement; or

    6.  divert or attempt to divert any customer or business from Franchisor or any other Franchisee or solicit or endeavor to obtain the business of any person who shall have been a customer of Franchisee's Franchise.

  17.  Pursuant to Article 12(A) of the Franchise Agreement, Defendant agreed to promptly pay all sums and debts owing to Curves, and to compensate Curves for any damages, costs, and expenses, including reasonable attorneys' fees, Curves incurred in enforcing termination of the Agreement for any default.

### Defendant's Breach of the Franchise Agreement

  18.  Defendant breached the Franchise Agreement by discontinuing the sale of CURVES® services and products at her facility while continuing to use the CURVES® Marks to sell fitness services to the public.

  19.  Upon learning of Defendant's actions, Curves sent a notice to cure to Defendant, dated August 18, 2006. That notice informed Defendant that her failure to pay delinquent royalty, advertising, and product fees constituted breaches of the Franchise Agreement. That notice demanded that Defendant compensate Curves for the monthly royalty fees in the amount of $790 and a late fee in the amount of $70, monthly advertising fees in the amount of $390 and a late fee in the amount of $70, and product fees in the amount of $16.16. That notice also informed Defendant that if she did not pay these delinquent fees to Curves within ten days of receipt of the letter, Curves would terminate the Franchise Agreement.

  20.  By letter dated January 8, 2007, Curves sent a second notice to cure to Defendant. That notice informed Defendant that her failure to pay delinquent royalty and advertising fees constituted breaches of the Franchise Agreement. That notice demanded that Defendant compensate Curves for the monthly royalty fees in the amount of $3,555 and a late fee in the amount of $315, as well as monthly advertising fees in the amount of $1,755 and a late fee in the

amount of $315.  That notice again informed Defendant that if she did not pay these delinquent fees to Curves within ten days of receipt of the letter, Curves would terminate the Franchise Agreement.

21.     Having received no payments for delinquent royalty or advertising fees despite providing Defendant ample notice and opportunity to cure her defaults, Curves sent a notice of termination to Defendant, dated January 22, 2007.  That notice informed Defendant that her repeated failure to pay delinquent royalty, advertising, and product fees constituted breaches of the Franchise Agreement.  That notice demanded that Defendant stop immediately her use of the CURVES® Marks and comply with the Franchise Agreement's other post-termination obligations.  That notice also demanded that Defendant compensate Curves for the monthly royalty fees in the amount of $3,555 and a late fee in the amount of $315, as well as monthly advertising fees in the amount of $1,755 and a late fee in the amount of $315.  That notice further demanded that Defendant compensate Curves for monthly royalty fees in the amount of $14,220 and monthly advertising fees in the amount of $7,020, that would have been payable for the remaining term of Defendant's Franchise Agreement.

22.     Despite Curves' notice of termination, Defendant continued to display the CURVES® Marks at the location of her facility and operated a fitness center at that location.  Defendant continued to use Curves' Marks to sell fitness center services to the public that were not authentic CURVES® services.

23.     Defendant has ignored Curves' repeated demands that she comply with her obligations under the Franchise Agreement.  Defendant continues to use CURVES® Marks, including Curves' signs, promotions, advertisements, equipment, and other materials, to sell fitness center services to the public.  Defendant also continues to operate a business that

competes with Curves and its franchisees at the same location as Defendant's formerly licensed CURVES® facility. Defendant further continues, upon information and belief, to sell fitness center services to some of the same customers that she serviced when she was operating her former CURVES® franchise. Defendant has refused to compensate Curves for the profits wrongfully earned by Defendant through the use of Curves' Marks after the termination of her franchise rights.

## COUNT I
### (Breach of Contract – Nonpayment of Fees)

24. Curves incorporates herein by reference the preceding paragraphs 1 through 23 of this Complaint.

25. The failure to pay all monies due under the Franchise Agreement after notice and opportunity to cure constitutes breaches of the Franchise Agreement and provides good cause for terminating that Agreement.

26. Based on this default, Curves sent Defendant a written notice of termination, terminating the Franchise Agreement effective January 22, 2007.

27. Defendant continues to ignore Curves' demand for payment of all past-due monies and has failed to comply with her post-termination obligations.

28. Defendant continues to use the Curves Marks, equipment, and other materials to operate a fitness center facility as if she was a licensed Curves franchisee.

29. As a direct and proximate result of these breaches, Curves has incurred substantial losses, fees, and expenses in an amount that has yet to be determined.

## COUNT II
### (Breach of Contract – Covenant Not to Compete)

30.     Curves incorporates herein by reference the preceding paragraphs 1 through 29 of this Complaint.

31.     Pursuant to Article 9(B) of the Franchise Agreement, Defendant agreed to refrain from competing with Curves and its other franchisees upon the termination of her franchise rights.  Pursuant to Article 9(B), Defendant agreed for a period of three years immediately following the termination of the Franchise Agreement that she would not: (1) operate a similar fitness or weight loss business within 40 miles of the area granted to her in the Franchise Agreement; (2) hire or seek to hire any employee of Curves or its franchisees; (3) interfere with any of Curves' business relationships and/or advantages; (4) use any confidential information from Curves' manuals or its business system; (5) use Curves' Marks to operate a similar fitness or weight loss business; and (6) divert or attempt to divert any customer or business from Curves and its franchisees.

32.     Defendant has breached Article 9(B) of the Franchise Agreement by continuing to own, maintain, and have an interest in a business that sells similar services at the same location formerly assigned to Defendant under the terms of the Franchise Agreement.

33.     Curves has a legitimate business interest in its valuable confidential business information, substantial business relationships with existing and prospective customers, and the goodwill associated with Curves' trademarks and trade names in the territory governed by the Franchise Agreement.

34.     As a result of Defendant's operation of a directly competitive business at the same location where Defendant formerly operated a licensed CURVES® franchise, Curves and its

other franchisees in New York and elsewhere have suffered irreparable harm and will continue to suffer irreparable harm.

35. Curves has no adequate remedy at law to protect its substantial business and property rights, and the damage from Defendant's activities is considerable and continuing and thus not capable of ascertainment at this time.

36. The non-competition provision in the Franchise Agreement is reasonably necessary to protect Curves' legitimate business interests.

37. As a result of Defendant's actions, Curves has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Federal Trademark Infringement)

38. Curves incorporates herein by reference the preceding paragraphs 1 through 37 of this Complaint.

39. After the termination of her franchise rights, Defendant continued to identify her facility as a CURVES® franchise and continued to use Curves' Marks to sell fitness center services to the public. Defendant's conduct constitutes an infringement on the trademark rights that are owned by Curves, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. Through her unlawful display of Curves' Marks, Defendant has profited and Curves has been damaged financially.

41. The acts of Defendant were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

42.     As a result of Defendant's actions, Curves has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (False Designation and Misrepresentation of Origin)

43.     Curves incorporates herein by reference the preceding paragraphs 1 through 42 of this Complaint.

44.     Defendant's above-referenced conduct constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.     By reason of the foregoing, Curves has suffered damages to the value of its trademarks and customer goodwill.

46.     The acts of Defendant were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

47.     As a result of Defendant's actions, Curves has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a.      For an injunctive order ratifying and enforcing the termination of the Franchise Agreement;

b.      For a preliminary and permanent injunction against Defendant, her directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with her, preventing her from owning, maintaining, engaging in, or having any interest in any business, other than a licensed Curves franchise, which sells any services or

products similar to those sold as part of the CURVES® franchise system for the period of three years from the date Defendant is first in compliance with her post-termination obligations under the Franchise Agreement;

      c.      For a preliminary and permanent injunction preventing Defendant, her directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with her from failing to comply with all post-termination obligations in the Franchise Agreement;

      d.      For damages for Defendant's post-termination use and/or display of Plaintiff's registered Marks;

      e.      For an accounting of Defendant's revenue, earnings, and profits for the purpose of determining unpaid royalty fees for the remaining term of the Franchise Agreement;

      f.      For an award of all unpaid royalty fees due for the remaining term of the Franchise Agreement, plus interest;

      g.      For an award of damages to be determined at trial for Defendant's wrongful acts and conduct;

      h.      For an award of an amount equal to three (3) times the earnings and profits obtained by Defendant from her post-termination wrongful infringement of Curves' trademarks, trade names, and service marks and from her other wrongful acts;

      i.      For an award of prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

      j.      For Plaintiff's costs, disbursements, costs of investigation and attorneys' fees incurred in this action pursuant to contract and the terms of the Lanham Act; and

    k.    For such other relief as the Court deems just and appropriate.

Respectfully submitted,

By: /s/ _____
    Ronald D. Degen, Esq. (RD 7808)
    Scott G. Goldfinger, Esq. (SG 9219)
    O'ROURKE & DEGEN, PLLC
    225 Broadway, Suite 715
    New York, New York 10007
    Telephone:  (212) 227-4530
    Facsimile:  (212) 385-9813
    E-mail:  rdegen@odlegal.com

    Eric L. Yaffe (EY 0368)
    Jimmy Chatsuthiphan (JC 3111)
    GRAY, PLANT, MOOTY, MOOTY &
      BENNETT, P.A.
    2600 Virginia Avenue, N.W., Suite 1111
    Washington, D.C. 20037
    Telephone:  (202) 295-2200
    Facsimile:  (202) 295-2250

    Attorneys for Plaintiff
Dated: July 13, 2007    Curves International, Inc.