**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

CURVES INTERNATIONAL, INC.,     :
  a Texas corporation,           :
                               :
        Plaintiff,             :
                               :
        v.                 :   C.A. No.
                               :
STEPHANIE O'CALLAGHAN,     :
  a Resident of New York,      :
                               :
        Defendant.       :

---------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A PRELIMINARY INJUNCTION

Ronald D. Degen, Esq. (RD 7808)
Scott G. Goldfinger, Esq. (SG 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, New York 10007
Telephone: (212) 227-4530
Facsimile: (212) 385-9813

Eric L. Yaffe (EY 0368)
Jimmy Chatsuthiphan (JC 3111)
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250

Attorneys for Plaintiff
Curves International, Inc.

Dated: July 17, 2007

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT ..........................................................................................................................6

   I.  CURVES SUFFERS IRREPARABLE HARM FROM DEFENDANT'S
      BREACH OF HER POST-TERMINATION OBLIGATIONS.........................................7

      A.  Defendant's Continued Violation of the Covenant Not To Compete Has
         Caused and Continues To Cause Irreparable Harm To Curves ...................................7

      B.  Defendant's Continued Use of Curves' Proprietary Marks and Methods Has
         Caused and Continues To Cause Irreparable Harm To Curves .................................13

   II.  CURVES IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS .................15

      A. Defendant Is Liable for Breach of Contract Under the Franchise Agreement
         Because She Has Failed to Pay Monies Due ..............................................................15

      B. Defendant Is Liable for Breach of Contract Under the Franchise Agreement
         Because She Has Violated the Covenant Against Competition....................................16

          1. The Non-Compete Provision's Duration Is Reasonable ...........................................17

          2. The Non-Compete Provision's Geographical Scope Is Reasonable.........................18

          3. Curves Has Several Legitimate Business Interests At Stake In This Case...............19

          4. Alternatively, The Court May Use Its 'Blue Pencil' Powers To Make The
             Non-Compete Provisions Reasonable and Enforceable...........................................21

      C. Curves Is Likely to Succeed On Its Trademark Infringement Claims .........................21

   III. SUFFICIENTLY SERIOUS QUESTIONS REGARDING THE MERITS EXIST
       TO MAKE THIS MATTER FAIR GROUNDS FOR LITIGATION AND THE
       BALANCE OF HARDSHIPS WEIGHS DECISIVELY IN CURVES' FAVOR.............24

CONCLUSION......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985)................................................................22

*Amer. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688 (N.D. Tex. 1996)..........................10

*American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1978)....................24

*Amerispec, Inc. v. Metro Inspection Service, Inc.*, 2001 WL 770999
(N.D. Tex. July 3, 2001) ................................................................................8, 16, 18, 19

*ATL Int'l, Inc. v. Baradar*, Bus. Franchise Guide (CCH) ¶ 11 (D. Md. 1997)..............................13

*ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643 (2d Cir. 1991) ..............................15

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992) ..........................................................9

*Burger King v. Hall*, 770 F. Supp. 633 (S.D. Fla. 1991) ..............................................................23

*Burger King v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ...................................................23, 24

*Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995)........................24

*C.B. Fleet Co. v. Complete Pkg. Corp.*, 739 F. Supp. 393 (N.D. Ill. 1990)....................................9

*DAR & Associates, Inc. v. Uniforce Services, Inc.*, 37 F. Supp. 2d 192 (E.D.N.Y. 1999)............11

*Domino's Pizza, Inc. v. El-Tan, Inc.*, 1995 WL 367893 (N.D. Okla. Apr. 28, 1995) .........7, 11, 12

*Dunkin' Donuts, Inc. v. Guang Chyi Liu*, 2000 U.S. Dist. LEXIS 18388 ....................................16

*Dunkin' Donuts Inc. v. Northern Queens Bakery, Inc.*, 216 F. Supp. 2d 31 (E.D.N.Y.
2001) ...............................................................................................................................15, 22

*Dunkin' Donuts v. Shivem, Inc.*, Bus. Franchise Guide (CCH) ¶10,681 (D.N.J. May 4,
1994) ......................................................................................................................................9

*Economou v. Physicians Weight Loss Centers of America, Inc.*,
756 F. Supp. 1024 (N.D. Ohio 1991).............................................................................10, 20

*El Greco Leather Prods., Co. v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir. 1986).........................14

*Eng v. Smith*, 849 F.2d 80 (2d Cir. 1988) ...................................................................................22

*Frank Burckhorst Co. v. G. Heileman Brewing Co.*, 875 F. Supp. 966 (E.D.N.Y. 1994)............22

*Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir. 1982) ................................12

*Gelder Medical Group v. Webber*, 394 N.Y.S.2d 867 (N.Y. 1977) ...............................................17

*General Cigar Co. v. G.D.M. Inc.*, 988 F. Supp. 647 (S.D.N.Y. 1997) .......................................22

*Giampapa v. Carvel Corp.*, Bus. Franchise Guide (CCH) ¶ 11,442 (D.N.J. June 18, 1998) .........7

*Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F. Supp. 152 (E.D.N.Y. 1995)..............13

*Hinkleman v. Shell Oil Co.*, 962 F.2d 372 (4th Cir. 1992) ...........................................................15

*Inflight Newspapers v. Magazines In-Flight, L.L.C.*, 990 F. Supp. 119 (E.D.N.Y. 1997) ............19

*Int'l Bartending Inst. v. Baird,* Bus. Franchise Guide (CCH) ¶ 10,222
(Fla. Cir. Ct. March 31, 1993)  ...................................................................................................11

*Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67 (2d Cir. 1996) ...............................................6, 24

*Jiffy Lube International, Inc. v. Weiss Brothers, Inc.*, 834 F. Supp. 683
(D.N.J. 1993)...........................................................................................................8, 9, 11, 12, 19

*Lane Capital Mgmt. v. Lane Capital Mgmt.*, 15 F. Supp. 2d 389 (S.D.N.Y. 1998) ......................22

*Lason Servs. v. Rathe*, 2003 U.S. Dist. LEXIS 3947 (N.D. Tex. 2003)  ......................................10

*Liberty Sales Assoc., Inc. v. Dow Corning Corp.,* 816 F. Supp. 1004 (D.N.J. 1993).....................7

*McDonald's Corp. v. Robert A. Makin, Inc.*, 653 F. Supp. 401 (W.D.N.Y. 1986) .......................16

*Meineke Discount Muffler v. Jaynes*, 999 F.2d 120 (5th Cir. 1993)..................................17, 18, 19

*Morningside Group v. Morningside Capital Group*, 182 F.3d 133 (2d Cir. 1999) ......................27

*N.W. Ayer & Son, Inc. v. Deare*, 1998 WL 811873 (S.D.N.Y. Nov. 18, 1998) ...........................18

*Omega Importing Corp. v. Petri-Kine Camera, Co.,* 451 F.2d 1190 (2d Cir. 1971)....................13

*Opticians Ass'n v. Independent Opticians*, 920 F.2d 187 (3d Cir. 1990).....................................22

*Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2d Cir. 1999)................................21

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961).................................23

*P.P. & K., Inc. v. McCumber*, Bus. Franchise Guide (CCH) ¶10,434
(N.D. Ill. May 3, 1994) .................................................................................................9

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ............................9

*Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*,
1996 WL 165518 (E.D. Pa. 1996) ............................................................................8, 13

*S & R v. Jiffy Lube International, Inc.*, 968 F.2d 371 (3d Cir. 1992) .................9, 14, 22

*Scott v. Snelling and Snelling, Inc.*, 732 F. Supp. 1034 (N.D. Cal. 1990) ......................7

*Servicemaster Residential/Commercial Services v. Westchester Cleaning Services, Inc.*,
2001 WL 396520 (S.D.N.Y. 2001) .............................................................................11

*Southland Corp. v. Froelich*, 41 F. Supp.2d 227 (E.D.N.Y. 1999) ...............................22

*Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49 (D. Mass. 1990) ............................24

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) ...........................................16

*Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981) ................................25

*Webcraft Technologies, Inc., v. McCaw*, 674 F. Supp. 1039 (S.D.N.Y. 1987) .............21

*USAchem, Inc. v. Goldstein*, 512 F.2d 163 (2d Cir. 1975) .............................................9

*Versames v. Palazzolo*, 96 F. Supp. 2d 361 (S.D.N.Y. 2000) ......................................22

## STATE CASES

*Amerada Hess Corp. v. Quinn,* 362 A.2d 1258 (N.J. Super. Ct.1976)...........................15

*Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504 (N.Y. App. Div. 2003) ........17

*Borne Chemical Co. v. Dictrow*, 445 N.Y.S.2d 406 (N.Y. App. Div. 1981)..................17

*Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770 (Tex. Ct. App. 1992).......................19, 21

*Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460 (Tex. App. 1987)...................17

*Independent Hlth Ass'n, Inc. v. Murray*, 649 N.Y.S.2d 616 (N.Y. 1996) ..............18, 19

*Integrated Interiors, Inc. v. Snyder*, 565 S.W.2d 350 (Tex. App. 1978) ..................17, 19

*Karpinski v. Ingrasci,* 28 N.Y.2d 45 (N.Y. 1971) ....................................................17, 21

*Weatherford Oil Tool co. v. Campbell*, 340 S.W.2d 950 (Tex. 1960)...........................................21

## STATUTES

15 U.S.C. §§ 1065.........................................................................................................22, 23

## OTHER AUTHORITIES

4 *McCarthy on Trademarks and Unfair Competition* § 25.31 (4th ed. 1999) .............................22

T. Pearce, L. King, J. Tharrington, *The Enforcement of Post-Termination Remedies in the Franchise Contract*, 24 OKLA. CITY U.L. REV. 81, 94 (1999)..................................................11

## INTRODUCTION

Defendant Stephanie O'Callaghan ("O'Callaghan") formerly enjoyed a license to display the CURVES® and CURVES FOR WOMEN® marks (collectively, the "Marks") used in the operation of licensed CURVES® franchises. CURVES® franchises operate thirty minute fitness and weight loss centers. Defendant participated in the CURVES® franchise system according to the terms of a Franchise Agreement she executed with Plaintiff Curves International, Inc. ("Curves"). Thereafter, Defendant repeatedly failed to pay royalty and advertising fees to Curves in violation of the Agreement. Those breaches led Curves to terminate Defendant's franchise rights, effective January 22, 2007. Unfortunately, Defendant recently converted her facility into an independent competing business at the very location of her former CURVES® franchise.

Immediately upon the termination of her franchise rights, Defendant was required to comply with the post-termination obligations she accepted as part of the Franchise Agreement. Specifically, Defendant was obligated to cease using all CURVES® Marks, equipment, and other indicia of a CURVES® franchise. Moreover, Defendant was required to abide by the terms of a reasonable post-termination covenant against competition she accepted as part of the Franchise Agreement. That covenant forbids Defendant from operating a business that competes with Curves and its franchisees for a period of three years within a defined radius of Defendant's formerly licensed area. Despite those obligations, Defendant continues to operate a fitness center business from her facility. Defendant also continues to use Curves' signs, promotions, advertisements, equipment, and other materials to unlawfully compete with Curves at the very location of Defendant's formerly licensed CURVES® franchise. Moreover, Defendant continues to represent her facility to the public as a licensed CURVES® franchise, and advertises that her facility provides CURVES® services and equipment. Defendant's continued operation of a

1

competitive fitness center in violation of the restrictive covenant she accepted has caused and continues to cause irreparable harm to Curves' customer goodwill and franchise system. Defendant's brazen disregard for her contractual obligations has left Curves no alternative but to seek an order from this Court requiring Defendant to cease immediately her unlawful conduct.

### STATEMENT OF FACTS

Curves is the owner of the federally registered CURVES® Marks. Certification of Kevin D. Ayers ("Ayers Cert."), Ex. 1, ¶ 3. Curves is in the business of developing and franchising a business system for the sale of fitness and weight loss services and products to the public under the CURVES® Marks. (*Id.*). Curves has invested substantial time, money and other resources in developing its unique business system and in the development and protection of its trademarks and trade names. (*Id.*, ¶ 4). Curves' Marks have been very widely advertised and promoted by Curves over the years. (*Id.*, ¶ 5). Curves and its franchisees have expended millions of dollars in advertising and promoting the Curves Marks over the last decade. (*Id.*). Curves and its franchisees currently operate approximately 10,000 Curves facilities worldwide. (*Id.*, ¶ 6).

As a result of the extensive sales, advertising, and promotion of services and products identified by the Curves marks, the public has come to know and recognize the Curves Marks, and to associate them exclusively with services and products offered by Curves and its franchisees. (*Id.*, ¶ 7). The Curves Marks are among the best and most widely known trademarks in the United States and throughout the world, and are assets of inestimable value to Curves, representing and embodying Curves' considerable goodwill and favorable reputation. (*Id.*). Curves licenses franchisees to use its Marks and participate in its business system pursuant to the terms of a written franchise agreement. (*Id.*, ¶ 3). On July 6, 2000, Defendant O'Callaghan entered into such a Franchise Agreement with Curves. (*Id.* ¶ 8, Ex. A).

The Franchise Agreement makes clear that the CURVES® Marks belong solely to Curves and that all customer goodwill established through Defendant's use of Curves' Marks inures to the exclusive benefit of Curves. (Ayers Cert. ¶¶ 4, 15, Ex. A, Article 6(A)). The Agreement also makes clear that Curves could terminate Defendant's franchise rights should Defendant violate any covenant of the Franchise Agreement, make any unauthorized use of Curves' Marks, or otherwise fail to comply with Curves' operating procedures and standards. (Ex. A, Article 11).

Defendant breached the Franchise Agreement by repeatedly failing to pay royalty and advertising fees. (Ayers Cert., ¶ 11). By letter dated August 18, 2006, Curves sent Defendant a notice to cure. (*Id.*, Ex. B). That notice informed Defendant that her decision to fail to submit royalty, advertising, and product fees constituted breaches of the Franchise Agreement, which would leave Curves no choice but to terminate unless Defendant immediately paid all delinquent fees to Curves within ten days of receipt of Curves' letter. (*Id.*). By letter dated January 8, 2007, Curves sent Defendant a second notice to cure. (*Id.*, ¶ 12; Ex. C). That notice reminded Defendant that her decision to fail to submit royalty, advertising, and product fees constituted breaches of the Franchise Agreement and reiterated Curves' intent to terminate absent payment of all delinquent fees to Curves within ten days of receipt of Curves' letter. (*Id.*).

Having received no payment of any delinquent fees from Defendant, Curves notified Defendant by letter dated January 22, 2007, that her repeated failure to pay delinquent fees constituted breaches of the Franchise Agreement and that her franchise rights were terminated, effective immediately. (Ayers Cert., ¶ 13, Ex. D). Curves' letter also reminded Defendant of her post-termination obligations under the Agreement. (*Id.*). That notice also demanded that Defendant compensate Curves for the monthly royalty fees in the amount of $3,555 and a late fee in the amount of $315, as well as monthly advertising fees in the amount of $1,755 and a late

fee in the amount of $315. That notice further demanded that Defendant compensate Curves for monthly royalty fees in the amount of $14,220 and monthly advertising fees in the amount of $7,020, that would have been payable for the remainder of Defendant's Agreement. (*Id.*).

Pursuant to the Franchise Agreement, upon the termination of her franchise rights, Defendant agreed to "refrain from doing anything that would imply or indicate" that she is "an authorized CURVES FOR WOMEN® franchisee," to "cease to use the Trademark or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan or symbol used in connection with the Franchise, including any reproduction, counterfeit copy, variation, emulation or colorable imitation thereof which is likely to cause confusion or mistake or deceive the public," and to return to Curves "all printed material furnished to Franchisee, including, without limitation, all Franchisor's manuals, advertising material, stationery and printed forms and all other matters relating to the operation of the Franchise and/or bearing the Trademark." (*Id.*, Exs. A and D, Article 12(A)).

Pursuant to Article 9(B) of the Franchise Agreement, Defendant also agreed to comply with the terms of a reasonable post-termination covenant against competition:

> Franchisee acknowledges that the names CURVES FOR WOMEN®, QUICKFIT, and THE HEAVIN FORMULA, the business reputation associated with such names, the methods and techniques employed by Franchisor, the training and instruction to be provided under and pursuant to this Agreement, the knowledge of the services and methods of Franchisor, and the opportunities, associations and experience established and acquired by Franchisee under and pursuant to this Agreement and as a member of the license system, are of considerable value. In consideration thereof, Franchisee therefore covenants and agrees that, except for any interest which Franchisee has in a competitive business on the effective date of this Agreement, by its signature hereinbelow, specifically consents, Franchisee shall not, directly or indirectly, as a proprietor, partner, investor, shareholder, member, director, officer, employer, employee, principal, agent, adviser, franchisor, franchisee, consultant or in any other individual or representative capacity or otherwise for a period of three (3) years immediately following the later of the expiration, termination or non-renewal of this Agreement for any reason or the date on which Franchisee actually ceases operation:

4

1.      engage in or participate in or derive any benefit from any similar business to that licensed and established under and pursuant to this Agreement within forty (40) miles of the area listed on "Schedule A" herein, without Franchisor's prior written consent.  If Franchisor grants permission for Franchisee to engage in the operation of a similar business as set forth above, Franchisee agrees that Franchisee will pay Franchisor a Royalty Fee for a period of twenty-four (24) months in accordance with Section 3.C. herein in addition to any other sums due and owing to Franchisor; or

2.      employ or seek to employ any person who is employed by Franchisor or any other Franchisee, or otherwise induce or seek to induce such person to leave his or her employment; or

3.      interfere or attempt to interfere with any of the business relationships and/or advantages of Franchisor or any other Franchisee; or

4.      use any confidential information from Franchisor's manuals or system in any manner which would be damaging or derogatory or hinder the relationship of Franchisor with its other Franchisees or the relationship of any other Franchisee with its customers; or

5.      use the Trademark, or any form of the Trademark, any other mark owned by Franchisor at the time of expiration, termination or non-renewal of this Agreement, or any confidential information from Franchisor's manuals or system in any manner to engage in or participate in or derive any benefit from any similar business to that licensed and established under and pursuant to this Agreement; or

6.      divert or attempt to divert any customer or business from Franchisor or any other Franchisee or solicit or endeavor to obtain the business of any person who shall have been a customer of Franchisee's Franchise.

Defendant has breached her post-termination obligations.  Subsequent to the date her franchise rights were terminated, Defendant has operated a facility that sells competing fitness center services at the very location of her formerly licensed CURVES® franchise, without Curves' consent.  (Ayers Cert., ¶¶ 14-15).  A visit to Defendant's facility conducted by a Curves representative on or about May 1, 2007 revealed that Defendant's facility continues to operate as a competing fitness center.  (Certification of Patricia Hoffman, Ex. 2, ¶ 4).  Additional visits to Defendant's facility conducted by Curves representatives on or about June 25, 2007 confirmed the same.  (*Id.*, ¶¶ 5-6).  Moreover, Defendant also continues to use and display at her facility

Curves' signs, promotions, advertisements, equipment, and other materials. (*Id.*). Defendant's continued operation of a competitive business at the very location of her formerly licensed CURVES® franchise has harmed and will continue to harm Curves' customer goodwill established at that location through Defendant's display of Curves' Marks. (Ayers Cert., ¶¶ 18-19). Defendant's unlawful competition will also make it difficult for Curves to refranchise this area and threatens additional irreparable harm to Curves' franchise system. (*Id.*, ¶¶ 20-21). The harm suffered by Curves is exacerbated by Defendant's continued use and display of Curves' equipment and other materials to facilitate her unlawful competition. (*Id.*). Curves is entitled to a preliminary injunction to restrain Defendant from further violating the Franchise Agreement.

**ARGUMENT**

The grant or denial of a preliminary injunction rests in the sound discretion of the trial court. The factors a court considers in whether to grant a preliminary injunction are:

> (1)    whether the plaintiff will suffer irreparable injury if the injunction is not granted; and either
>
> (2)    whether there is a substantial likelihood that the plaintiff will succeed on the merits; *or*
>
> (3)    whether sufficiently serious questions going to the merits exist to make them fair grounds for litigation and a balance of hardships weighs decisively toward the party requesting the injunction.

*See Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996). Applying this standard to the instant case, Curves is entitled to the injunctive relief it seeks.

## I.    CURVES SUFFERS IRREPARABLE HARM FROM DEFENDANT'S BREACH OF HER POST-TERMINATION OBLIGATIONS

Curves suffers irreparable harm each day that Defendant operates her fitness center in violation of the post-termination obligations set forth in the Franchise Agreement and in violation of the Lanham Act.

### A.    Defendant's Continued Violation of the Covenant Not To Compete Has Caused and Continues To Cause Irreparable Harm To Curves.

First, Curves suffers irreparable harm to the customer goodwill developed at the location of Defendant's fitness center through Defendant's continued violation of her covenant against competition and use of Curves equipment and materials.  Goodwill is, of course, "the value that results from the probability that old customers will continue to trade with an established concern."  *Domino's Pizza, Inc. v. El-Tan, Inc.,* 1995 WL 367893 at *3 (N.D. Okla. Apr. 28, 1995) (attached as Ex. 3).  The goodwill generated by the operation of a franchise location belongs to the franchisor, not the franchisee.  As observed by the court in *Giampapa v. Carvel Corp.*, Bus. Franchise Guide (CCH) ¶ 11,442, at 30,816, 30,817 (D.N.J. June 18, 1998) (attached as Ex. 4), many courts have found that "customer goodwill developed by the seller or franchisor" is a protectable interest, and the franchisor "has a legitimate interest in protecting the goodwill developed" at a particular location.  As stated in *Liberty Sales Assoc., Inc. v. Dow Corning Corp.,* 816 F. Supp. 1004, 1010 (D.N.J. 1993), the relationship "is one in which the franchisee wraps himself with the trade name of the franchisor and relies on the franchisor's goodwill to induce the public to buy."  According to *Scott v. Snelling and Snelling, Inc.,* 732 F. Supp. 1034, 1041 (N.D. Cal. 1990), "since the opportunity to utilize the goodwill by the franchisee is revocable, it is more like a lease than a sale of the goodwill; and the franchisor agrees that the franchisee may benefit from the goodwill for a specified period of time, and for a specified price."

Defendant herself recognized that any customer goodwill generated at her facility belongs not to her but to Curves.  According to Article 6(A) of the Franchise Agreement, Defendant agreed that the CURVES® Marks "are the exclusive property of Franchisor" and "it has not acquired and will not acquire any ownership interests, equitable rights, goodwill or other interests in any Trademark … and will not represent that it has."

7

Because of the importance of preserving customer goodwill, many courts have recognized the need for restrictive covenants in the franchise context. By the very nature of the franchise business model, a franchisee receives the right to trade off the customer goodwill associated with the franchisor's trademarks. If a terminated franchisee were permitted to continue operating a competitive business at or near the same location as the previously franchised business, that former franchisee would be able to continue to capitalize impermissibly on the customer goodwill formerly associated with the franchised location through its display of the franchisor's trademarks. For that reason, courts that have considered this issue have determined that a franchisor has a legitimate need for restrictive covenants barring competition by former franchisees at or near the location of formerly franchised locations. As one court has noted:

> [The franchisor] has demonstrated that its trademark has developed goodwill. It is entitled to protect that goodwill by preventing a former franchisee who operated under its trademark for ten years from competing against it. The law recognizes as a legitimate business interest the right to protect the goodwill associated with a trademark.

*Amerispec, Inc.*, 2001 WL 770999 at * 4 (N.D. Tex. July 3, 2001) (attached as Ex. 5); *see also Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*, 1996 WL 165518 at * 3 (E.D. Pa. 1996) (attached as Ex. 6) ("A franchisor has a protectable interest in the sale of a franchise because of expenditures made by a franchisor for market development and training, the grant of an exclusive sales area, and permission to use the franchisor's name"). When a franchise agreement is terminated, the customer goodwill developed at the franchised location reverts to the franchisor as the trademark holder. *See Jiffy Lube International, Inc. v. Weiss Bros.*, 834 F. Supp. 683, 691 (D.N.J. 1993) ("One can view a franchise agreement, in part, as a conveyance of the franchisor's good will to the franchisee for the length of the franchise. When the franchise

terminates, the good will is, metaphysically, reconveyed to the franchisor.  A restrictive

covenant, reasonably crafted, is necessary to protect the good will after that reconveyance").

The covenant not to compete is thus vital to protect Curves' considerable goodwill and

hard-won reputation.  *Dunkin' Donuts v. Shivem, Inc.*, Bus. Franchise Guide (CCH)

¶10,681(D.N.J. May 4, 2994) (attached as Ex. 7) ("Without a preliminary injunction to restrain

Defendant from operating a competing doughnut shop either in the exact location which was

formerly a Dunkin' Donuts shop or in that general vicinity, plaintiff will clearly suffer harm to its

goodwill.").  Harm to goodwill is, by its very nature, irreparable.  *See S & R v. Jiffy Lube*

*International, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) ("Grounds for irreparable injury include

loss of control of reputation, loss of trade, and loss of goodwill."); *Basicomputer Corp. v. Scott*,

973 F.2d 507, 512 (6th Cir. 1992) ("Since competitive injuries and loss of goodwill are difficult

to quantify, the [district] court did not err in finding that [the plaintiff] would suffer irreparable

harm in the absence of an injunction.").

The harm to Curves' reputation and goodwill cannot be compensated by money damages

and, thus, there is no adequate remedy at law.  *See P.P. & K., Inc. v. McCumber*, Bus. Franchise

Guide (CCH) ¶10,434 (N.D. Ill. May 3, 1994) (attached as Ex. 8) (harms suffered by franchisor

resulting from franchisee's breach of covenant not to compete "cannot be fully redressed by

assessment of damages"); *C.B. Fleet Co. v. Complete Pkg. Corp.*, 739 F. Supp. 393, 398 (N.D.

Ill. 1990) ("harm to reputation cannot be adequately remedied at law").

New York law recognizes the importance of injunctive relief in situations where a party's

customer goodwill is threatened.  *See USAchem, Inc. v. Goldstein*, 512 F.2d 163, 167 (2d Cir.

1975) (covenants against competition after termination "have been specifically enforced by

injunction in cases where the goodwill of the employer's customers had attached."); *Reuters Ltd.*

*v. United Press Int'l, Inc.*, 903 F.2d 904, 907-08 (2d Cir. 1990) (loss of customers and goodwill can constitute irreparable harm). Texas[1] law is no different in this regard. *See Amer. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) (where goodwill is involved, the threat is significant that the harm will be irreparable without injunctive relief); *Lason Servs. v. Rathe*, 2003 U.S. Dist. LEXIS 3947, at *25 (N.D. Tex. 2003) (attached as Ex. 9) ("Loss of goodwill qualifies as irreparable harm that can form a basis for injunctive relief.").

Here, Defendant's facility has developed substantial customer goodwill through its display of the CURVES® Marks.  That goodwill belongs not to Defendant, but to Curves, whose Marks generated it.  Now that Defendant's franchise rights have been terminated, she should not be permitted to wrongfully appropriate Curves' customer goodwill by continuing to operate a competing business at the same location, using Curves' signs, equipment, and other materials.

Second, Curves suffers irreparable harm to its ability to compete with Defendant by re-franchising the area she formerly served.  During her tenure as a CURVES® franchisee, Defendant learned how to operate a fitness and weight loss business.  It would be improper to permit Defendant to now take the knowledge gained from her association with Curves and use that knowledge to compete with Curves and its other franchisees at the same location.  *See Economou*, 756 F. Supp. at 1032 ("the franchisee has gained knowledge and experience from the franchisor, and to allow the franchisee to use this knowledge and experience to serve former or potential customers of the franchisor would work a hardship and prejudice to the latter").

Permitting Defendant to continue operating her business in violation of the restrictive covenant she accepted would force Curves to contend with an experienced former franchisee

---

[1] The Franchise Agreement requires that it be "governed and construed under and in accordance with the laws of the State of Texas."  (Article 14(N)).  Texas law is not inconsistent and enforces trademark violations and noncompete agreements in the franchise context.  See cases cited herein.

operating at the same location where it was previously licensed to do so.  The existence of such a former franchisee will also make it difficult for Curves to re-franchise this area.  Post-term covenants against competition are ubiquitous in franchising — and for good reason.  According to one commentator, "it is not an overstatement to suggest that the continued viability of the franchise system depends, in large part, on the enforceability of the covenant against competition."  T. Pearce, L. King, J. Tharrington, *The Enforcement of Post-Termination Remedies in the Franchise Contract*, 24 OKLA. CITY U.L. REV. 81, 94 (1999).  The covenant gives the franchisor a fair opportunity to re-franchise an area formerly served by a franchisee.

The courts and commentators have observed, repeatedly, that the continued operation of a business by a former franchisee at the same location, even if under a different name, makes it virtually impossible for the franchisor to re-franchise the area.  The court in *Jiffy Lube v. Weiss Bros.*, 834 F. Supp. at 692, stated that the existence of a competing franchise "at the very site" of the former franchise location, "even without" the franchisor's mark, "would greatly impair [the franchisor's] ability to establish another franchise in the area."  The same concern was expressed by the court in *Domino's Pizza*, 1995 WL 367893 at *3, when it found that "without injunctive relief, Domino's would suffer irreparable harm due to its inability to attract new franchisees to the area now serviced by" the former franchisee.  *See also Servicemaster Residential/Commercial Services v. Westchester Cleaning Services, Inc.,* 2001 WL 396520 (S.D.N.Y. 2001) (attached as Ex. 10) (covenant protects franchisor's "interest in re-franchising the market"); *DAR & Associates, Inc. v. Uniforce Services, Inc.,* 37 F. Supp. 2d 192 (E.D.N.Y. 1999) (refusal to enforce covenant "would impede franchisor's ability to secure another franchise in territory"); *Int'l Bartending Inst. v. Baird,* Bus. Franchise Guide (CCH) ¶ 10,222, at 24,348 (Fla. Cir. Ct. March 31, 1993) (attached as Ex. 11) (the franchisor need not re-franchise an area as a condition

11

to obtaining an injunction, but only after elimination of the former franchisee's unlawful competition should the franchisor be expected to re-franchise the area).

Here, a potential franchisee would certainly be concerned by the existence of a former franchisee operating within that new franchisee's area, especially as that former franchisee has knowledge of Curves' marketing plans, the costs of operating a CURVES® franchise, and the business strategy to be employed by the new franchisee. Curves' interest in re-franchising provides further support for enforcement of Defendant's restrictive covenant. *See Jiffy Lube v. Weiss Bros.*, 834 F. Supp. at 691. Curves suffers irreparable harm to its ability to recapture customer goodwill through establishment of a new franchise so long as Defendant continues to operate her competitive business. Moreover, Curves' other franchisees in this area will be deprived of the opportunity to maintain Defendant's former customers as CURVES® customers due to that unfair competition. The number of customers that Curves will lose to Defendant cannot be determined and thus cannot be compensated through the award of monetary relief. Finally, Curves will suffer irreparable harm to its entire franchise system should Defendant be permitted to break away from the CURVES® franchise system and operate a competitive business at the same location. If a disgruntled franchisee were permitted to simply walk away from a franchisor's system, "its licensing program w[ould] lose much of the confidence reposed in it by [its] licensees." *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 651 (6th Cir. 1982). Indeed, the value of a Curves franchise would decline precipitously if a franchisee knew that her fellow franchisee could – without adverse consequence – simply close up her Curves facility on Friday and re-open it as a non-Curves center the following Monday. *See Domino's Pizza*, 1995 WL 367893, at *3 (franchisor would suffer irreparable harm without covenant due to "inability to attract new franchisees"). Moreover, "if [the franchisor] is unable to enforce this

restrictive covenant against these [franchisees], the value of its franchises are lower … [o]ther franchisees might violate their franchise agreements in similar ways and use Rita's goodwill to establish competing businesses." *Rita's Water Ice Franchise Corp.*, 1996 WL 165518 at \*5.

Defendant is not the only franchisee to have executed a Franchise Agreement containing a covenant against competition. Instead, such covenants are the norm in Curves' franchise agreements. Were Defendant permitted to continue operating a competing business after termination at the exact location of her formerly licensed business, other franchisees could be inspired to do the same. If the only penalty associated with a breach of the franchise agreement were the requirement that Curves' trademarks be removed, Curves could face other defections by franchisees who decide they could operate profitably an independent fitness center facility. The loss of numerous franchisees, who would then become well-trained competitors of Curves and its remaining franchisees, would seriously harm the entire franchise system. *See ATL Int'l, Inc. v. Baradar*, Bus. Franchise Guide (CCH) ¶ 11,345 (D. Md. 1997) (attached as Ex. 12) ("[I]f a franchisee simply were to stop paying fees or stop other things that were due and then, after having operated under the franchise name for several years, were simply to say okay, I'm breaking away, … that that would be a clear signal that other franchisees could do the same…. my failure to grant the injunction here might unravel the franchise system."). The irreparable harm Curves has suffered, and continues to suffer, entitles it to injunctive relief.

**B.    Defendants' Continued Use of Curves' Proprietary Marks and Methods Has Caused and Continues To Cause Irreparable Harm To Curves.**

Where "a plaintiff in a trademark infringement case has demonstrated a likelihood of success on the merits 'irreparable injury . . . almost inevitably follows' and, indeed, is presumed." *Helene Curtis v. Nat'l Wholesale Liquidators,* Inc., 890 F. Supp. 152, 160 (E.D.N.Y. 1995) (quoting *Omega Importing Corp. v. Petri-Kine Camera, Co.,* 451 F.2d 1190, 1195 (2d Cir.

1971)).  Here, Curves has been and will continue to be irreparably harmed by Defendant's unlicensed use of Curves' Marks.

A franchisor, like any trademark owner, has the right to license others to use its trademarks only in the manner that it prescribes.  The unauthorized or unlicensed use of those marks creates a situation where the franchisor no longer can control its reputation and goodwill. Courts have uniformly held that the lack of control amounts to irreparable injury warranting an injunction.  *See*, *e.g.*, *El Greco Leather Prods., Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986) ("[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured under the holder's trademark.").

A franchisor lacks control over its trademarks when a franchise agreement is terminated and yet the franchisee continues to utilize the franchisor's trademarks – which is the precise situation here.  In such circumstances, the courts have consistently recognized a franchisor's right to an injunction preventing the continued unauthorized use of its trademarks.  *See*, *e.g.*, *S & R v. Jiffy Lube*, 968 F.2d at 375  ("The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated … [o]nce a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act.").

Curves has invested a tremendous amount of resources over the years in building the considerable goodwill associated with its Marks.  Defendant's conduct in continuing to operate her center after termination of the Franchise Agreement interferes with the ability of Curves to control the quality of the services that Defendant continues to provide under Curves' Marks.

The lack of control that Curves has over its Marks is demonstrated in other ways as well. Assuming that they are dealing with an authorized franchisee of Curves, customers of Defendant's facility will believe they are purchasing authentic services of Curves, when in fact

14

they are not.  *See Dunkin' Donuts v. Northern Queens Bakery, Inc.*, 216 F. Supp. 2d 31, 40

(E.D.N.Y. 2001) ("[w]here the party seeking a preliminary injunction in trademark case shows

that it will 'will lose control over the reputation of its trademark pending trial,' the requirement

of irreparable injury is satisfied.").  As a result of Defendant's distribution of services held out to

be those of Curves, Curves faces damage to its reputation, and consequently a loss of customers.

*See id.* ("[D]amages to a business's goodwill as a result of unauthorized trademark usage are not

readily quantifiable and, thus, constitute irreparable injury.").  Accordingly, ample justification

exists for a finding of irreparable injury to Curves.

**II.**    **CURVES IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS**

> **A.**    **Defendant Is Liable for Breach of Contract Under the Franchise Agreement Because She Has Failed to Pay Monies Due.**

There can be no issue that Defendant's Franchise Agreement was properly terminated and

that Defendant has refused to comply with her post-termination obligations under that agreement.

Under the Franchise Agreement, Defendant must pay royalty and advertising fees to Curves.

(Article 3).  Under the Franchise Agreement, a failure to pay financial obligations is a default,

which if not timely cured, allows for immediate termination of the Agreement.  (Article 11).

Curves is highly likely to succeed on its claims for breach of contract based on

Defendant's failure to pay her financial obligations.  The Franchisee's obligation to pay royalties

and fees is a vital part of any franchise relationship.  *See, e.g., Amerada Hess Corp. v. Quinn,* 362

A.2d 1258, 1268, 143 N.J. Super. 237, 256 (1976).  The nonpayment of fees constitutes just

cause for termination both under the express terms of the Franchise Agreement and pursuant to

case law.  *See Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 376 (4th Cir. 1992) (holding that

franchisor had cause to terminate franchisee for nonpayment of fees, despite allegation by

franchisee that rent charged was excessive), *cert. denied,* 506 U.S. 1041 (1992); *ARP Films, Inc.*

*v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991); *McDonald's Corp. v. Robert A.*

*Makin, Inc.*, 653 F. Supp. 401, 403-04 (W.D.N.Y. 1986); *Dunkin' Donuts, Inc. v. Guang Chyi*

*Liu,* 2000 U.S. Dist. LEXIS 18388, at *11-13 (E.D. Pa. Dec. 21, 2000) (attached as Ex. 13).

Thus, Defendant's Franchise Agreement was validly terminated pursuant to its express terms.

The Franchise Agreement requires Defendant to cease using Curves' proprietary marks

after the termination of her Franchise Agreement. (Article 12). Additionally, Defendant is

required to take other post-termination actions, including, among other things, assigning and

delivering to Curves all check drafts for memberships and any past or present membership lists

or leads. (*Id.*). To date, Defendant has refused to comply with her post-termination obligations.

Defendants have indisputably breached the express terms of the contract, and Curves is thus

likely to succeed on Counts I-II of their Complaint.

  **B.**  **Defendant Is Liable for Breach of Contract Under the Franchise Agreement Because She Has Violated the Covenant Against Competition.**

Upon termination of her franchise rights, Defendant agreed to be bound by several post-

termination obligations. Pursuant to Article 12(A), Defendant agreed to cease using the Curves

"Trademark or any confusingly similar name, device, mark, service mark, trademark, trade name,

slogan or symbol used in connection with Franchisee." Defendant also agreed to be bound by a

post-termination covenant against competition, as set forth in Article 9(B). Under either New

York or Texas law, both those obligations are reasonable and must be enforced.

Under New York law, a non-compete agreement may be enforced by the Court where the

covenant contains reasonable provisions as to location, time, and the interest protected. *See Ticor*

*Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) (applying New York law). Texas relies on

similar factors in considering covenants against competition. *See Amerispec, Inc. v. Metro*

*Inspection Service, Inc.*, 2001 WL 770999, at *5 (N.D. Tex. July 3, 2001) (quoting Tex. Bus. &

Com. Code § 15.50(a) (West 2000) ("a covenant not to compete is enforceable . . . to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.")). *See also Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 123 (5th Cir. 1993) (covenant not to compete must be ancillary to an otherwise enforceable agreement).[2]  The covenant at issue here meets all these criteria.

### 1.    The Non-Compete Provision's Duration Is Reasonable.

Although New York law does not enumerate a specific duration regarding the reasonableness of a non-competition agreement, New York courts have upheld covenants of three years, as the parties bargained for in this case.  *See*, *e.g.*, *Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504, 505-07 (N.Y. App. Div. 2003) (finding three-year non-compete restriction reasonable); *Borne Chemical Co. v. Dictrow*, 445 N.Y.S.2d 406, 412-13 (N.Y. App. Div. 1981) (same).  *See also Integrated Interiors, Inc. v. Snyder*, 565 S.W.2d 350, 352-53 (Tex. App. 1978) (three years).  In fact, New York and Texas courts have upheld restrictive covenants of even longer duration.  *See Gelder Medical Group v. Webber*, 394 N.Y.S.2d 867, 871 (N.Y. 1977) (five years); *Karpinski v. Ingrasci,* 28 N.Y.2d 45, 50 (N.Y. 1971) (unlimited duration); *Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 464-65 (Tex. App. 1987) (five years).

In this case, Curves engages in a distinctive franchise system and only seeks to restrict Defendant pursuant to the Franchise Agreement which she signed as a condition of her license with Curves.  The covenant Defendant accepted prohibits her from competing with Curves for a

---

[2] In this case, the non-compete provision is ancillary to the Franchise Agreement.  The main purpose of the Franchise Agreement is the conveyance of a right to operate a CURVES® franchise in exchange for a percentage of that franchise's revenues.  Under the Franchise Agreement, Defendant received equipment, training, promotional support and the use of the CURVES® Marks.  In return, Curves received ongoing royalty and advertising fees.  The non-compete provision was included in the Franchise Agreement to protect Curves' quality standards and the CURVES® Marks, as well as to ease the way for replacement franchises into the market.  As such, the restrictive covenant is secondary to the primary purpose of the Franchise Agreement.

period of three years.  This restriction represents the minimum time necessary to permit Curves to retain its customer goodwill and establish a new franchisee in this area.  (Ayers Cert, ¶¶ 18).  The three-year restriction will give Curves and its other franchisees sufficient time in which to retain Defendant's former customers by convincing those customers to patronize other CURVES® locations.  Curves has invested considerable effort and money developing its franchise system throughout the United States.  Given the nature of this business system and the restrictions on Defendant's activities, the three-year restrictions contained in the Franchise Agreement are reasonable and enforceable.

 2. **The Non-Compete Provision's Geographical Scope Is Reasonable.**

Courts also have routinely upheld non-competition agreements that prohibit competition if the geographic limitation is reasonable.  *See Independent Hlth Ass'n, Inc. v. Murray*, 649 N.Y.S.2d 616, 617 (N.Y. 1996); *Amerispec, Inc.*, 2001 WL 770999, at *5.

A geographic limitation, coupled with a customer restriction, is reasonable and enforceable.  *See N.W. Ayer & Son, Inc. v. Deare*, 1998 WL 811873, at *2 (S.D.N.Y. Nov. 18, 1998) (attached as Ex. 14).  Curves seeks to restrain Defendant from competing with Curves within a radius of 40 miles of her formerly licensed area.  If she operates a competitive business outside the radius contained in the restrictive covenant, she will not benefit impermissibly from the lingering customer goodwill associated with Curves' Marks.  (Ayers Cert., ¶ 19).

Defendant may continue to earn a living in the fitness center business with little disruption.  Defendant need do no more than relocate her business to another location outside the protected area.  Alternatively, Defendant may remain at her present location, provided she alters her business to avoid competing services.  Such a narrowly tailored restriction to Curves' operations is reasonable and enforceable under New York and Texas law.  *See*, *e.g.*, *Meineke*

*Discount Muffler*, 999 F.2d at 126-27; *Inflight Newspapers* 990 F. Supp. at 135 (upholding

seven-state geographic restriction in non-compete agreement); *Integrated Interiors, Inc.*, 565

S.W.2d at 352-53 (50-mile limitation reasonable).

> ### 3.      Curves Has Several Legitimate Business Interests At Stake In This Case.

As discussed above in Section I of this brief, Curves has at least three legitimate business

interests in enforcing Defendant's non-competition obligations.  First, and most importantly,

Curves has a legitimate business interest in preventing Defendant from wrongfully appropriating

the customer goodwill associated with the CURVES® trademarks at the location of her formerly

licensed CURVES® franchise.  Through the Franchise Agreement, Defendant agreed that all

goodwill generated at her CURVES® facility belongs properly to Curves, as the owner of the

Marks under which that goodwill was generated.  Even without that acknowledgement, courts

have recognized that customer goodwill belongs to a franchisor, not a franchisee.  *See, e.g., Jiffy

Lube v. Weiss Brothers* 834 F. Supp. at 691 (D.N.J. 1993).  A non-compete agreement may be

enforced when "necessary to protect trade secrets, customer lists, or goodwill of the franchisor's

business."  *Independent Hlth Ass'n, Inc.*, 649 N.Y.S.2d at 617.  *See also Amerispec, Inc.*, 2001

WL 770999, at *4 (proprietary information is a protectable interest); *Butts Retail, Inc. v.

Diversifoods, Inc.*, 840 S.W.2d 770, 773 (Tex. Ct. App. 1992) (franchisor's "business of

goodwill, trade secrets or other confidential information or proprietary information" are

legitimate interests that support the enforcement of an ancillary covenant not to compete).

In this case, Curves has a legitimate interest in protecting the customer goodwill

generated as a result of Defendant's display of the CURVES® Marks at her facility.  If

Defendant is permitted to continue operating a fitness business at the very location of her former

CURVES® franchise, Defendant will improperly be able to convert Curves' customers to her

own customers.  Customers who patronize Defendant's center because of its former association

with the CURVES® system will find that they can purchase fitness services from Defendant.

Rather than leave Defendant's facility to find another CURVES® location, those customers may

choose to purchase Defendant's services and thus become Defendant's customers.  Curves has a

legitimate interest in preventing the conversion of its customers and the loss of its goodwill.

Curves also has a legitimate interest in protecting itself from Defendant's unfair

competition.  During her tenure as a CURVES® franchisee, Defendant learned much about how

to operate a fitness center business.  It would be improper to permit Defendant to now take the

knowledge gained from her association with Curves and use that knowledge to compete with

Curves and its other franchisees at the same location.  *See Economou* 756 F. Supp. at 1032 (N.D.

Ohio 1991) ("The franchisee has gained knowledge and experience from the franchisor, and to

allow the franchisee to use this knowledge and experience to serve former or potential customers

of the franchisor would work a hardship and prejudice to the latter").  Permitting Defendant to

continue operating a competitive fitness center will make it difficult for Curves to re-franchise

this area and give Defendant a further unfair advantage in her competition with Curves.

Finally, Curves has a legitimate interest in preserving the integrity of its franchise system.

Covenants against competition are the norm in Curves' franchise system.  Were Defendant

permitted to continue operating a competing business at the very location of her formerly

franchised facility, other franchisees could also be inspired to breach their covenants against

competition.  If Curves' franchisees believe they can breach their agreements, then continue

operating the same type of business at the same location, Curves risks the possibility of losing

multiple franchisees who believe they can run an independent fitness business without paying

fees to Curves.  Curves has a legitimate interest in preventing defections by numerous franchisees who would then become well-trained competitors of Curves and its remaining franchisees.

### 4.    Alternatively, The Court May Use Its 'Blue Pencil' Powers To Make The Non-Compete Provisions Reasonable and Enforceable.

Although there is an abundance of authority to support the reasonableness of the temporal and geographic restrictions in the Franchise Agreement, if this Court determines those restrictions to be unreasonable, it may use its "blue pencil" powers to render the contract enforceable.  *See Webcraft Technologies, Inc., v. McCaw*, 674 F. Supp. 1039, 1047 (S.D.N.Y. 1987); *Karpinski v. Ingrasci*, 28 N.Y.2d at 52; *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 952-53 (Tex. 1960); *Butts Retail,* 840 S.W.2d at 774-75.

As the court held in *Karpinski*, "if in balancing the equities the court decides that his activity would fit within the scope of a reasonable prohibition, it is apt to make use of the tool of severance, paring an unreasonable restraint down to size and enforcing it."  28 N.Y.2d at 52. Thus, if the Court finds any of the restrictions unreasonable, it may still enforce the Agreement in a reasonable fashion by establishing a shorter duration or a narrower geographic limitation.  *Id.* Because Defendant is operating a competing business at her former Curves location, however the Court redraws the restriction, Defendant will still be violating the covenant against competition.

### C.    Curves Is Likely to Succeed On Its Trademark Infringement Claims.

Because Curves is likely to succeed on its breach of contract claim, it is also likely to succeed on its trademark claims.  To prevail on a trademark infringement claim, a plaintiff must establish (1) the use by another of plaintiff's valid trademark, (2) in a way that is likely to confuse consumers as to the source of the product.  *See Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999).  The standard to judge likelihood of success is whether the plaintiff has made a showing that the probability of its prevailing is better than fifty percent.

21

*See Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015,

1025 (2d Cir. 1985)); *Versames v. Palazzolo*, 96 F. Supp. 2d 361, 366 (S.D.N.Y. 2000).

Curves' Marks have been properly registered in accordance with the Lanham Act, and are

thus valid and legally protectable.  *See* 15 U.S.C. §§ 1065, 1115; *see also Frank Burckhorst Co.*

*v. G. Heileman Brewing Co.*, 875 F. Supp. 966, 975 (E.D.N.Y. 1994) ("The existence of a

trademark registration is prima facie evidence of a valid trademark."); *General Cigar Co. v.*

*G.D.M. Inc.*, 988 F. Supp. 647, 663 (S.D.N.Y. 1997) ("registration of a trademark establishes a

presumption that it is distinctive and should receive the utmost protection").  Defendant has used,

and continues to use, Curves' Marks to sell fitness center services.

Turning to the second element, "there is a great likelihood of confusion when the

infringer uses the exact trademark as the plaintiff."  *S & R v. Jiffy Lube*, 968 F.2d at 375 (quoting

*Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 195 (3d Cir. 1990)); *see also Lane*

*Capital Mgmt. v. Lane Capital Mgmt.*, 15 F. Supp. 2d 389, 398 (S.D.N.Y. 1998), *aff'd*, 192 F.3d

337 (2d Cir. 1999).  Indeed, in such a case, "'the likelihood of confusion is inevitable.'"

*Northern Queens*, 216 F. Supp. 2d at 44 (quoting *Opticians Ass'n*, 920 F.2d at 195).  *See also*

*Southland Corp. v. Froelich*, 41 F. Supp.2d 227, 243 (E.D.N.Y. 1999) ("[W]here the

unauthorized user of the trademark continues to use the identical, previously licensed trademark,

after revocation of the license, likelihood of confusion is established.").

Simply put, Defendant's status as a "holdover" franchisee is *dispositive* of the

infringement issue.  4 *McCarthy on Trademarks and Unfair Competition* § 25.31 (4th ed. 1999)

("Once a license contract is terminated, there is no doubt that the ex-licensee has no authorization

or consent to continue use of the mark … [c]ontinued use by an ex-licensee of the licensor's

mark constitutes a fraud on the public, since they are led to think that the ex-licensee is still

connected with the licensor."); *see also Burger King v. Majeed*, 805 F. Supp. 994, 1002-03 (S.D. Fla. 1992) (noting "well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes unfair competition").

Defendant has been terminated and thus is operating as a holdover franchisee. This is dispositive of the issue of infringement and thus there is no need to conduct the Second Circuit's eight-factor test for determining likelihood of confusion.[3] Once a license contract is terminated, there is no doubt that the ex-licensee has no authorization or consent to continue use of the mark. After the license has ended, the ex-licensee must stop use of the mark. Continued use by an ex-licensee of the licensor's mark constitutes a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor. *See Majeed*, 805 F. Supp. at 1002-03 (noting "well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes unfair competition").

Defendant is continuing to use the exact same marks as when she was a licensed franchisee. Accordingly, confusion is not only likely, it is inevitable, and the Court should find that Curves is likely to succeed on the merits at trial.

---

[3] The Second Circuit's eight factor test is set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). *See also Morningside Group v. Morningside Capital Group*, 182 F.3d 133, 138 (2d Cir. 1999) (listing the *Polaroid* factors). Were such an analysis necessary, it would only confirm that a likelihood of confusion exists under the facts presented: (1) strength of mark – Curves' marks are registered, incontestable under 15 U.S.C. § 1065, and entitled to a statutory presumption of validity; (2) degree of similarity of the marks – the marks in question are the same because Defendant continues to use Curves' marks; (3) similarity of services – the services are identical because Defendant continues to operate her facility using Curves' marks to sell fitness center services as if she were still a Curves franchisee; (4) bridging the gap – Curves already offers her services through an identical retail outlet to the same customers; (5) actual confusion (not required to show likelihood of confusion) – Defendant's unauthorized use of Curves' marks can have no result other than to cause actual confusion because customers cannot possibly know that Defendant is not a licensed franchisee of Curves; (6) Defendant's intent – Defendant clearly intends to pass off her store as an authorized CURVES® facility despite the knowledge that her Franchise Agreement has been terminated; (7) quality of the respective services – even if Defendant is selling quality services, that would only serve to heighten the confusion to customers; and (8) sophistication of prospective purchasers – Plaintiff's services are frequently purchased on impulse and thus not subject to a high degree of scrutiny. *See Majeed*, 805 F. Supp. at 1002-03 and *Burger King v. Hall*, 770 F. Supp. 633, 638 (S.D. Fla. 1991) (conducting similar analysis for holdover franchisees).

**III.** **SUFFICIENTLY SERIOUS QUESTIONS REGARDING THE MERITS EXIST TO MAKE THIS MATTER FAIR GROUNDS FOR LITIGATION AND THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY IN CURVES' FAVOR.**

By demonstrating its likelihood of success on the merits, *supra*, Curves has already made the lesser showing that sufficiently serious questions going to the merits exist to make them fair grounds for litigation.  *See Amestoy*, 92 F.3d at 70.  Furthermore, it is plain that the balance of hardships weighs decisively in Curves' favor.

The harm to Curves from Defendant's unlicensed use of its marks outweighs any hardship Defendant may suffer from the grant of the requested injunction.  In contrast to the irreparable harm suffered by Curves, any harm to Defendant is completely self-inflicted and thus cannot be irreparable as a matter of law.  *See Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (self-inflicted harm cannot be "irreparable"); *American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978) ("[o]ne who adopts the mark of another for similar goods acts at his own peril," because he has no claim to the profits or advantages thereby derived); *Majeed*, 805 F. Supp. at 1006 ("Defendants simply have no equitable standing to complain of injury should their infringements be preliminarily enjoined.").

Moreover, any costs to Defendant is insignificant when balanced against the irreparable injury to the goodwill that Curves has created through millions of dollars spent advertising and promoting their marks for over a decade.  *See Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 51 (D. Mass. 1990) (holding that plaintiff's expenditures on four years' worth of advertising and promotion outweighed harm to infringers).  Denying an injunction would adversely affect Curves' other franchisees – those who play by the rules and abide by their own franchise agreements.  Those franchisees have a significant interest in preventing unlicensed individuals from operating under Curves' Marks.  Licensed franchisees trust Curves to protect their

investment in the system.  *See Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir.

1981) ("If the injunction is denied, . . . [the franchisor's] licensing program will lose much of the

confidence reposed in it by the licensees, who also made substantial investments based upon the

exclusivity of their licenses.").  The balance of harms weighs decisively in Curves' favor.

## CONCLUSION

The requisite elements for issuance of an injunction are more than satisfied here.  Curves

has been and continues to be irreparably injured by Defendant's conduct.  Curves is likely to

succeed on the merits, or, at the very least, has established the existence of sufficiently serious

questions going to the merits which, when coupled with the hardships facing them, militate in

favor of an injunction.  Furthermore, Curves does not have an adequate remedy at law.

Accordingly, Curves respectfully requests that its motion for preliminary injunction be granted.

Respectfully submitted,

By:  /s/ Ronald D. Degen
      Ronald D. Degen, Esq. (RD 7808)
      Scott G. Goldfinger, Esq. (SG 9219)
      O'ROURKE & DEGEN, PLLC
      225 Broadway, Suite 715
      New York, New York 10007
      Telephone:     (212) 227-4530
      Facsimile:     (212) 385-9813
      Eric L. Yaffe (EY 0368)
      Jimmy Chatsuthiphan (JC 3111)
      GRAY, PLANT, MOOTY, MOOTY
        & BENNETT, P.A.
      2600 Virginia Avenue, N.W., Suite 1111
      Washington, D.C.  20037
      Telephone:     (202) 295-2200
      Facsimile:     (202) 295-2250
      Attorneys for Plaintiff
Dated:  July 17, 2007          Curves International, Inc.

25