US-DIST-CT, BUSINESS FRANCHISE GUIDE ¶10,676, Domino's Pizza, Inc. v. El-Tan, Inc., Michael A. Ellis, Danny Tan Sheau Yang, Owasso Pizza, Inc., and Wayne Salisbury; Domino's Pizza, Inc. v. B.A. Enterprises, Inc., Lewis Wayne Humbyrd, Ronald Predl, and Jerry Evans; Domino's Pizza, Inc. v. Elvieanna Lynne Potts. (Filed April 28, 1995)

© 2006 CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

Domino's Pizza, Inc. v. El-Tan, Inc., Michael A. Ellis, Danny Tan Sheau Yang, Owasso Pizza, Inc., and Wayne Salisbury; Domino's Pizza, Inc. v. B.A. Enterprises, Inc., Lewis Wayne Humbyrd, Ronald Predl, and Jerry Evans; Domino's Pizza, Inc. v. Elvieanna Lynne Potts.

U.S. District Court, Northern District of Oklahoma. Case Nos. 95-C-180-B, 95-C-181-B and 95-C-182-BU. Filed April 28, 1995.

**Agreements Not to Compete --Enforceability --Sale of Goodwill --Reasonableness. --**

A covenant not to compete contained in a pizza franchise agreement was valid and enforceable against the terminated franchisee under Oklahoma law, since the covenant was ancillary to a sale of good will (i.e. the franchise agreement). Even if the franchise agreement could not be considered the sale of goodwill, however, the covenant would be enforceable as a reasonable restriction on the exercise of a lawful profession. The covenant only restricted the franchisee from offering carry-out and delivery services for one year in a ten-mile radius from the franchise site.

**Back reference: ¶845.**

**Preliminary Relief --Enforcement of Noncompetition Agreement --Likelihood of Success --Irreparable Harm --Balance of Harm --Public Interest. --**

A terminated pizza franchisee was preliminarily enjoined from operating in violation of the franchise agreement's covenant not to compete. The franchisor was likely to succeed on the merits of its claim that the noncompetition covenant was enforceable and would suffer irreparable harm if the covenant were not enforced due to its inability to attract new franchisees in the area and the likelihood of customer confusion. Furthermore, the balance of harm favored the franchisor because the covenant was restricted to carry-out and delivery services and any injury to the franchisee was mitigated by the franchisor's posting of a bond. The issuance of preliminary injunction would not be adverse to the public interest.

**Back reference: ¶845.**

[Opinion in full text]

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

BRETT, D.J.: The Court has for consideration the motion for a preliminary injunction (Docket #3), pursuant to Fed.R.Civ.P. 65, filed by Plaintiff Domino's Pizza ("Domino's"). Domino's seeks to prevent Defendants, who are former Domino's franchisees, from operating a pizza carry-out and delivery business at the sites of their former Domino's stores, pursuant to a covenant not to compete included in the franchise agreements. Domino's also seeks assumption of leases on the former Domino's sites, and to prevent Defendants from keeping and using all confidential customer information, also in accordance with provisions in the four written franchise agreements. Defendants currently are operating "All-Star Pizza" stores which include pizza carry-out and delivery services, at the sites of their former Domino's franchises. A hearing was held on this motion March 28, 29 and April 3, 1995. After considering the pleadings and issues presented, the relevant evidence and the arguments of counsel, the Court enters the following Findings of Fact and Conclusions of Law:

*FINDINGS OF FACT*

CCH Internet Research NetWork                                                              Page 2 of 5

1. Plaintiff Domino's Pizza is a Michigan corporation with its principal place of business in Michigan. Domino's is authorized to transact business in Oklahoma and did so at the relevant times herein.

2. Defendants El-Tan, Inc., B.A. Enterprises, Inc., and Owasso Pizza, Inc. are Oklahoma corporations with their principal places of business in Oklahoma. Defendants Elvieanna Lynne Potts, Michael A. Ellis, Danny Tan, Sheau Yang, Wayne Salisbury, Lewis W. Humbyrd, Ronald Predl and Jerry Evans are citizens of Oklahoma.

3. Domino's owns, uses, promotes and licenses certain trademarks, service marks and commercial symbols ("Domino's Marks")

4. Domino's operates and licenses persons to operate retail pizza carry-out and delivery services using Domino's Marks. These Domino's stores utilize a uniform business format, using special equipment and specifications for the preparation and sale of pizza and other authorized food and beverage products.

5. Defendant-Franchisees El-Tan (Sand Springs, Oklahoma), B.A. Enterprises (Broken Arrow, Oklahoma), Owasso Pizza (Owasso, Oklahoma), and Potts (Claremore, Oklahoma), operated four Domino's pizza stores in cities near Tulsa under written franchise agreements with Domino's (Plaintiff's Exhibits 1A, 2A, 3 and 4). Defendant-Guarantors Ellis (Owasso and Sand Springs), Yang (Sand Springs), Salisbury (Owasso), Humbyrd (Broken Arrow), Predl (Broken Arrow) and Evans (Broken Arrow) guaranteed payment and performance of the respective franchise contracts.

6. The franchise agreements allowed the Defendants the exclusive use of Domino's Marks within their respective territories.

7. The franchise agreements constitute a sale of Domino's goodwill for the duration of the franchise agreements. Domino's has accrued goodwill over its history of operating approximately 5,000 pizza carry-out and delivery stores worldwide (franchise or company-owned) and carrying on multimillion-dollar advertising campaigns annually.

8. Domino's provides a profit-sharing plan whereby franchisees who sign up for the program received a rebate on food and other products purchased from Domino's (Plaintiff's Exhibits 18, 21).

9. Defendants did not sign up for the profit-sharing plan.

10. On February 27, 1995, the Defendants, of their own volition, changed the names of their respective stores from "Domino's" to "All-Star Pizza" and continued operation at the sites of their Domino's franchises.

11. The franchise agreements were terminated by Domino's via hand-delivery of written notice to the respective Defendants on February 27, 1995, for good cause under the franchise agreements.

12. The franchise agreements provide covenants not to compete and a lease assignment clause that go into effect upon termination of the franchise.

13. Three of the covenants not to compete --in the franchise agreements of the Owasso Defendants,[2] the Sand Springs Defendants[3] and Defendant Potts --state:

You agree that, for a period of one (1) year after termination or expiration of this Agreement ... you will not, directly or indirectly for the benefit of you or your owners, or through or on behalf of or in conjunction with any other person, partnership or corporation, own, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any other interest, whether financial or otherwise, *in any carry-out or delivery pizza store business* located at the premises of the Store or within ten (10) miles of the premises of the Store (except for other Domino's Pizza Stores operated under franchise agreements with us or other Domino's Pizza Stores in which you or your owners shall have an ownership interest) ... [emphasis supplied].

http://business.cch.com/primesrc/bin/highwire.dll                                              10/9/2006

14. The covenant in the Broken Arrow franchise agreement is essentially the same, except that the covenant does not go into effect if the franchisee terminates for cause."

15. The franchise agreements also require Defendants to return all copies of the Domino's Operating Manual, all written customer lists and other proprietary information.

16. The Court issued a Temporary Restraining Order on February 28, 1995 with concurrence of the parties requiring Defendants to remove all Domino's Marks from the store premises, and to transfer to Domino's all telephone numbers listed under Domino's names, trademarks and commercial symbols.

17. Domino's posted a bond in the amount of $100,000 on March 3, 1995 in accordance with the Court's Order of February 28, 1995.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties herein. 28 U.S.C. §1332.

2. Venue is proper under 28 U.S.C. §1391.

3. Any Finding of Fact above which might be properly characterized a Conclusion of Law is included herein.

4. The party seeking a preliminary injunction must show: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. *Kansas Health Care v. Kansas Department of Social & Rehabilitation Services*, 31 F.3d 1536, 1542 (10th Cir. 1994).

5. When the movant prevails on the other factors, the Tenth Circuit Court of Appeals applies a modified version of the "success on the merits" prong. "It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Koerpel v. Heckler*, 797 F.2d 858, 866 (10th Cir. 1986), citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1981).

6. Contracts in restraint of trade are void and unenforceable in Oklahoma unless they fall within one of two statutorily created exceptions: the sale of goodwill, or dissolution of a partnership. See 15 O.S. §217-19; *Bayly, Martin & Fay v. Pickard*, 780 P.2d 1168 (Okla. 1989).

7. "Goodwill" has been defined in Oklahoma as "the custom or patronage of any established trade or business; the benefit or advantage of having established a business and secured its patronage by the public." *Freeling v. Wood*, 361 P.2d 1061, 1063 (Okla. 1961), citing Black's Law Dictionary, Third Edition. The *Freeling* court further stated that the goodwill of a business "is the value that results from the probability that old customers will continue to trade with an established concern." *Id.*

8. Oklahoma courts have not considered whether 15 O.S. §213 applies to franchise agreements. [6] There is a split of authority in other jurisdictions as to whether franchise agreements are indeed a sale of goodwill.

9. There is a substantial likelihood that Oklahoma courts would follow the majority of courts in holding that covenants not to compete in franchise agreements are valid under §218. [7] See *Novus Franchising, Inc. v. Taylor*, 795 F.Supp. 122, 129 (M.D.Pa. 1992).

10. Under the record here, the Court holds that the covenant not to compete is likely to be held valid under §218.

11. If, however, the covenant would not be considered as ancillary to a sale of goodwill, the Court believes the covenant would be valid under 15 O.S. §217, which holds that reasonable restrictions on the exercise of a lawful

CCH Internet Research NetWork                                         Page 4 of 5

profession are enforceable in Oklahoma. *Bayly, Martin & Fay*, 780 P.2d at 1170.

12. The covenant, which is restricted to a 10-mile radius from the franchise site, a one-year duration, and to prohibiting pizza carry-out and delivery services only, is a reasonable restriction.

13. The Court concludes that Domino's has met the Tenth Circuit's modified version of the "success on the merits" prong. It has raised substantial questions as to the validity of the covenant not to compete, which indicate that this issue is a "fair ground for litigation."

14. Without injunctive relief, Domino's would suffer irreparable harm due to its inability to attract new franchisees to the area now serviced by All-Star Pizza. Further, there is a substantial likelihood of confusion among customers because the Defendants are operating pizza carry-out and delivery stores at the same location as the former Domino's franchises. *See Economou v. Physicians Weight Loss Centers*, 756 F.Supp. 1024, 1039 (N.D.Ohio 1991) ("[T]he purpose of the covenants is to protect against loss of control of reputation, loss of good will and consumer confusion. In general, the courts have held theses are sufficient grounds for a finding of irreparable injury.")

15. Defendants' claim of irreparable harm has been mitigated by the bond posted by Domino's; further, the covenant does not prevent Defendants from serving other types of food, or even dine-in pizza. Therefore, the balance of harm favors Domino's.

16. Issuing a preliminary injunction in this case will not be adverse to the public interest.

17. Under Fed.R.Civ.P. 65(a)(2), "evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record of the trial and need not be repeated upon the trial."

19. [ *sic* ] Domino's Motion for a Preliminary Injunction is hereby granted as provided in the Preliminary Injunction filed contemporaneously herewith.

20. The parties will adhere to the following trial schedule:

June 2, 1995 --EXCHANGE THE NAMES AND ADDRESSES OF ALL WITNESSES, INCLUDING EXPERTS, IN WRITING, ALONG WITH A BRIEF STATEMENT REGARDING EACH WITNESS' EXPECTED TESTIMONY (UNNECESSARY IF WITNESS' DEPOSITION TAKEN);

June 16, 1995 --COMPLETE ALL DISCOVERY;

July 7, 1995 --FILE AN AGREED PRETRIAL ORDER AND EXCHANGE ALL PRENUMBERED EXHIBITS;

July 7, 1995 --PRETRIAL CONFERENCE AT 2 P.M.;

August 14, 1995 --FILE SUGGESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ANY TRIAL BRIEFS.

[1] Their expressed reason for doing so was that, in operating under the subject Domino's franchise agreements, their expenses were exceeding income.

[2] Owasso Pizza, Inc., Michael A. Ellis and Wayne Salisbury.

[3] El-Tan, Inc., Michael A. Ellis and Danny Tan Sheau Yang.

[4] This franchise agreement involves Defendants B.A. Enterprises, Inc., Lewis Wayne Humbyrd, Ronald Predl and Jerry Evans.

[5] To terminate for cause, the franchisee must provide to Domino's a written 30-day notice of any breaches of the franchise agreement, and an opportunity to cure. The franchisee further must provide a 10-day notice to

terminate

⁵ The parties agreed at the preliminary injunction hearing that, should §218 apply, in this case the territorial restriction therein is not violated by the covenant not to compete.

⁶ California courts hold that covenants not to compete in franchise agreements are not ancillary to a sale of goodwill. *Scott v. Snelling and Snelling*, 732 F. Supp. 1034, 1041 (N.D. Cal. 1990). However, the *Scott* case applied California law; both California and Oklahoma courts have noted the split between California and Oklahoma law on applying the "rule of reason" to covenants restraining competition. *See Bayly, Martin & Fay*, 780 P.2d at 1171, n.9; *Scott*, 732 F. Supp. at n.11. Because of this split, the Court does not consider *Scott* --cited by Defendants --to be persuasive when considering covenants not to compete under Oklahoma law.

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company