

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Amerispec, Inc. v. Metro Inspection Services, Inc.
N.D.Tex.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.
AMERISPEC, INC., Plaintiff-counterdefendant,
v.
METRO INSPECTION SERVICES, INC., et al., Defendants-counterplaintiffs.
**No. CIV.A.3:01-CV-0946-D.**

July 3, 2001.

MEMORANDUM OPINION AND ORDER
FITZWATER, District J.
**\*1** A franchisor seeks a preliminary injunction against former franchisees and their company to prevent them from competing in the business of providing real estate inspection services and to preclude their use of the franchisor's trademark and trade name in telephone listings for their competitive business. [FN1] The court grants the motion in part and denies it in part for the reasons that follow. [FN2] By separate order, it enters a preliminary injunction.

> FN1. Plaintiff's preliminary injunction application is before the court under the procedure permitted by Fed.R.Civ.P. 43(e) and is being decided on the papers without an evidentiary hearing. *See, e .g., Jones v. Bush,* 122 F.Supp.2d 713, 715 (N.D.Tex.) (Fitzwater, J.), *aff'd,* 244 F.3d 134 (5th Cir.2000) (per curiam) (table), *cert. denied,* ___ U.S. ___, 121 S.Ct. 749 (2001).

> FN2. The court sets out in this memorandum opinion and order its findings of fact and conclusions of law. *See* Rule 52(a).

I

Plaintiff-counterdefendant AmeriSpec, Inc. ("AmeriSpec") is a franchisor of businesses that provide residential inspection services under the trademark and trade name AmeriSpec®." AmeriSpec and defendants-counterplaintiffs M. Wayne Holt and Deborah B. Holt ("the Holts") entered into a ten-year franchise agreement ("Franchise Agreement") in 1991 that gave the Holts the nonexclusive right to serve the following designated territory that covered portions of Tarrant and Dallas Counties, Texas: "that portion of Tarrant County, North of Highway 10, East of 135 West, and South of Grapevine Lake. The eastern boundary will be the Dallas/Tarrant County Line, except for a portion of Dallas County lying between Highway 114 and Highway 183." Agrmt. Dec. 6, 1991 Amended Territory Addendum.[FN3]

> FN3. The Holts later assigned their franchise rights to Metro Inspection Services, Inc. ("Metro"), a defendant-counterplaintiff in this case. Unless the context indicates otherwise, to distinguish between the Holts as AmeriSpec franchisees from 1991 to 2001, and as current competitors doing business in the corporate form of Metro, the court will refer to them as "the Holts" when discussing them in their capacities as former AmeriSpec franchisees.

Under the agreement, AmeriSpec authorized the Holts to use its trademark and trade name and proprietary system of operation (including standards, specifications, methods, procedures, techniques, management systems, identification schemes, and information) to conduct a building inspection service from one mutually agreed location within the designated territory. Although, during the initial franchise term, AmeriSpec could not award another person a franchise to establish a residential inspection service within the designated territory, and could not establish its own office, the Holts could solicit customers outside their designated territory and other AmeriSpec offices could solicit business within the Holts' designated territory. The Franchise Agreement obligated AmeriSpec to provide training and assistance

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

in residential inspections to the Holts' inspector-employees. AmeriSpec was also obligated to loan the Holts a confidential operations manual, a guide to home inspections manual, and a business development manual intended to help them identify the market for the services to be offered and to instruct and assist them in marketing.

The Franchise Agreement obligated the Holts to pay an initial franchise fee, periodically pay AmeriSpec earned service fees and advertising contributions, attend training and assistance programs, operate their business according to prescribed standards, prominently display the AmeriSpec trademark and trade name (and to do so according to prescribed restrictions), maintain financial information and undergo audits, and preserve the confidentiality of AmeriSpec's system of operation and the concepts and methods of promotion franchised to them under the agreement.

**\*2** Pertinent to the instant preliminary injunction application, the agreement contained a post-termination covenant that, for a period of one year, prohibits the Holts from directly or indirectly operating, owning, being employed by, or consulting with, any business that conducts residential building inspections, or providing business inspection services, other than one operated under a valid AmeriSpec franchise, within the Franchise Agreement's designated territory, within ten miles of the designated territory, or within a radius of ten miles from the location of any other AmeriSpec office in existence at the time of expiration or termination of the franchise agreement. The Holts are also prohibited from employing the AmeriSpec® trademark or trade name.

After maintaining an active AmeriSpec franchise for ten years, the Holts decided not to renew the Franchise Agreement at the conclusion of its initial term, and the agreement expired on May 1, 2001. AmeriSpec alleges that the Holts, through their corporation, defendant-counterplaintiff Metro Inspection Services, Inc. ("Metro"), are providing real estate inspection services in their former market and are using the AmeriSpec® trademark and trade name. It moves for a preliminary injunction to enjoin defendants from violating the covenant not to compete and from using AmeriSpec's trademark and trade name in telephone listings.[FN4]

> FN4. AmeriSpec states in its motion that it seeks injunctive relief to compel defendants to comply with several post-expiration Franchise Agreement obligations, including the covenant not to compete. *See* P. Mot. at 3. The court does not address any other such obligations, either because defendants have adduced evidence that they have complied with them, *see* Ds.App. 172, 176-77, or because they no longer appear to be at issue, *see* P. Rep. Br. at 15-16.

II

To obtain a preliminary injunction, AmeriSpec must establish (1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants, and (4) that granting the preliminary injunction will not disserve the public interest. *See Jones v. Bush,* 122 F.Supp.2d 713, 718 (N.D.Tex.) (Fitzwater, J.) (citing *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 777 F.Supp. 1349, 1353 (N.D.Tex.) (Fitzwater, J.)), *aff'd,* 948 F.2d 1286 (5th Cir.1991) (per curiam) (table)), *aff'd,* 244 F.3d 134 (5th Cir.2000) (per curiam) (table), *cert. denied,* ___ U.S. ___, 121 S.Ct. 749 (2001). "A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.' " *Id.* (quoting *White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir.1989); *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985)).

III

AmeriSpec first seeks injunctive relief precluding defendants from using the AmeriSpec® trademark or trade name in telephone listings. The court denies this request.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendants' evidence shows that, by May 2, 2001, they had begun using new business cards with the Metro name, obtained new signage for the business, and procured new letterhead and marketing materials under the Metro name. Metro issued press releases using the name Metro and canceled all assumed names using AmeriSpec. *See* Ds.App. 28-38, 53, 102, and 176-77.

**\*3** AmeriSpec complains specifically about the continued listing of the AmeriSpec name in the yellow and white pages of telephone directories. Defendants have produced proof, however, that they notified the telephone company that Metro was not authorized to use the former AmeriSpec telephone number and requested new telephone and fax lines, and that the delay in canceling the telephone number is attributable to the telephone company. *Id.* at 177-80. Although the AmeriSpec name (with an inoperable telephone number, *see id.* at 180) will remain until new directories are published, the name is not associated with a telephone number that Metro currently uses, and defendants have notified the telephone company that they want to discontinue using the telephone number associated with AmeriSpec. *See id.* at 177-80. Under the facts that have been developed, there is no basis to enjoin defendants' use of the telephone listings at issue, and this aspect of AmeriSpec's motion is denied.

IV

AmeriSpec next seeks injunctive relief to preclude defendants from providing real estate inspection services that violate the Franchise Agreement's covenant not to compete.

A

AmeriSpec must first establish a substantial likelihood that it will prevail on the merits. The terms of the noncompete covenant contained in the Franchise Agreement are undisputed. *See* P. Compl. Ex. A; Ds.App. 13. AmeriSpec has introduced proof, *see* P.App. 4, 10-11, and defendants essentially concede, *see* Ds.App. 176-77 (and appendix pages cited), that they are providing real estate inspection services in at least some of the geographic areas that are covered by the noncompete clause. Texas law provides that

a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com.Code Ann. § 15.50(a) (Vernon Pamp. Supp.2001).

1

Defendants contend that AmeriSpec has failed to meet its burden under the first element because the noncompete covenant violates Texas law and public policy and is unenforceable. Because the primary purpose of the Franchise Agreement is not to obligate the Holts to render personal services, defendants have the burden of establishing that the covenant does not meet the criteria of § 15.50. *See* Tex. Bus. & Com.Code Ann. § 15.51(b) (Vernon Pamp. Supp.2001). Defendants have failed to carry this burden.[FN5]

> FN5. Even if the court assumes *arguendo* that AmeriSpec has the burden, it has established that the covenant not to compete meets the criteria specified in § 15.50(a).

The noncompete clause complies with § 15.50(a) because it is ancillary to or part of an otherwise enforceable agreement at the time the agreement was made. The Franchise Agreement is an otherwise enforceable agreement. AmeriSpec and the Holts exchanged mutual promises. The noncompete agreement is ancillary to the Franchise Agreement. AmeriSpec gave the Holts consideration-proprietary information and training in exchange for their promise not to disclose it or use it competitively-that gives rise to AmeriSpec's interest in restraining them from competing. The noncompete clause is designed to enforce that consideration or return promise: to prevent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

former franchisees from disclosing confidential information or using it to compete with AmeriSpec franchisees.

### 2

**\*4** Defendants argue next that Metro does not compete with AmeriSpec because AmeriSpec sells franchises and Metro sells real estate inspections. They maintain that "[i]t is axiomatic that one who does not compete with a plaintiff has not violated any non-competition agreement with that plaintiff." Ds. Br. at 4.

Assuming *arguendo* that this reasoning would have force if AmeriSpec and the Holts had entered into a agreement that merely forbade the Holts from "competing" with AmeriSpec, it is inapposite to the facts of this case. AmeriSpec and the Holts agreed under the noncompete clause that the Holts would not "directly or indirectly, operate, own, be employed by, or consult with, any business conducting residential building inspections, or providing business inspection services, other than one operated under a valid franchise agreement with [AmeriSpec]." Agrmt. ¶ 14. Therefore, the dispositive question is whether the Holts are providing the types of inspections and services constrained under the covenant, not more generally whether defendants are competing with AmeriSpec. Because the evidence shows that they are performing inspection services that the noncompete clause forbids, this argument lacks merit.

### 3

Defendants assert that AmeriSpec lacks a legitimate business interest that the covenant is necessary to protect, because AmeriSpec still retains the franchise's goodwill (and is not entitled to the franchisee's goodwill); there are no trade secrets and no confidential or proprietary information involved; and the real reason for the suit is to stifle legitimate competition from former franchisees who, like the Holts, may opt not to renew their franchises.

AmeriSpec has demonstrated that its trademark has developed goodwill. It is entitled to protect that goodwill by preventing a former franchisee who operated under its trademark for ten years from competing against it. The law recognizes as a legitimate business interest the right to protect the goodwill associated with a trademark. *See, e.g., Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 806 (3d Cir.1998) ("The concept of customers' goodwill in the context of trademark law is goodwill for the mark, not for the specific restaurant.").

AmeriSpec is not obligated to prove that trade secrets are involved, provided independent, non-illusory consideration is given. *See Curtis v. Ziff Energy Group, Ltd.,* 12 S.W.3d 114, 118 (Tex.App.1999, no writ). The court has already held above that AmeriSpec has satisfied this requirement. And AmeriSpec has demonstrated that it provided the Holts confidential information that they agreed they would not disclose. *See, e.g.,* Agrmt. ¶¶ 7(05), 7(06), 8(03), and 13(01).

Nor is it of consequence that AmeriSpec may be seeking by this lawsuit to deter other franchisees from opting not to renew their agreements and then competing directly with current AmeriSpec franchisees. If the parties in the instant case agreed to the noncompete covenant,[FN6] and it complies with Texas law, AmeriSpec is entitled to enforce it, regardless of its subjective motive for doing so. Moreover, courts have recognized the legitimate interest of franchisors in protecting their franchise systems. *See* P. Br. at 19-22 (collecting and discussing cases).

   FN6. Metro is also bound as an assignee of the Franchise Agreement. *See* Agrmt. ¶ 20(02).

### 4

**\*5** Under Texas law, "a covenant not to compete is enforceable ... to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com.Code Ann. § 15.50(a) (Vernon Pamp. Supp.2001). Although defendants do not challenge the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

noncompete covenant based on its one-year time period, they posit that the clause is unreasonable in its geographical scope and that the covenant exceeds what is necessary to protect AmeriSpec's goodwill or other business interest. AmeriSpec contends that it is not unreasonable, but maintains in the alternative that, if it is, the court must reform the clause rather than decline to enforce it, since both § 15.51(c) of the Texas Business and Commerce Code and ¶ 20(06) of the Franchise Agreement provide for reformation.

The court rejects defendants' challenge to the scope of the activity to be restrained. Defendants argue that the interest worthy of protection is AmeriSpec's trade name and mark and, because they have already ceased using the trade name and mark, have returned all materials that use the trade name and mark, and have surrendered the telephone numbers associated with the trade name and mark, no additional relief is warranted. The court holds that these actions alone are insufficient to protect AmeriSpec's goodwill. It therefore rejects their challenge to the scope of activity to be restrained.

The court now turns to the geographical scope of the noncompete clause. As noted, the covenant prohibits the Holts from directly or indirectly operating, owning, being employed by, or consulting with, any business that conducts residential building inspections, or providing business inspection services, other than one operated under a valid AmeriSpec franchise, (1) within the contractually-defined designated territory, (2) within ten miles of the designated territory, or (3) within a radius of ten miles from the location of any other AmeriSpec office in existence at the time of expiration or termination of the franchise agreement. Defendants have introduced evidence that, based on the locations of the offices of the three existing Dallas/Fort Worth AmeriSpec franchises and the Holts' former territory, the covenant's restrictions eliminate them from doing business virtually anywhere in the Dallas/Fort Worth Metroplex. *See* Ds.App. 156, 185-86.[FN7] AmeriSpec argues that restrictions of this magnitude are necessary due to the mobile nature of the business, in which inspections are conducted throughout, and sometimes outside, a territory, regardless where the physical office is located. *See* P.App. 7. Steve Wadlington, AmeriSpec's Chief Operating Officer, testified that, unlike a fixed-location business, AmeriSpec franchisees conduct business by traveling to the real estate to be inspected, regardless where it is located within the territory, and they conduct business outside their territory if the request comes from within their territory. *Id.* They develop their business primarily through contacts with real estate agents, brokers, and others in the real estate industry. *Id.* at 6-7. The ten-mile buffer is reasonable and necessary to protect the AmeriSpec franchisee who replaces the former franchisee, and because franchisees also occasionally inspect properties outside their territories if the request comes from within the territory. *Id.* at 7.

> [FN7.] Defendants also contend that, under the noncompete clause, AmeriSpec could create what are essentially token franchises and thereby foreclose competition by former franchisees. In view of the basis on which the court is enforcing the covenant-*i.e.,* not enjoining defendants from doing business in the designated territories of existing AmeriSpec franchisees-it need not consider this argument.

**\*6** The court holds, on the basis of the record developed,[FN8] that AmeriSpec is entitled to a preliminary injunction that prohibits defendants from directly or indirectly operating, owning, being employed by, or consulting with, any business that conducts residential building inspections, or providing business inspection services, other than one operated under a valid AmeriSpec franchise, within the Franchise Agreement's designated territory or within ten miles of the designated territory. The evidence that AmeriSpec has adduced supports protecting it from suffering injury to its goodwill for one year within the territory that the Holts' former franchise served and within a ten-mile radius of the designated territory. AmeriSpec has not introduced evidence, however, that establishes that during the ten-year term of the Franchise Agreement, the Holts competed for or did business in the designated territories of other AmeriSpec franchisees. The portion of the noncompete covenant that forecloses defendants from operating in a vast market, without evidence that they competed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 6
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

there using the goodwill of the franchise, is geographically unreasonable and, at the preliminary injunction stage,[FN9] unenforceable.

> FN8. This holding is limited to the preliminary injunction ruling. It is not a final decision-which can only be reached after full consideration of the merits (by pretrial motion or trial)-that the noncompete covenant is unreasonable, and therefore partly unenforceable, in its geographical scope.
>
> FN9. *See supra* note 8.

Accordingly, the court holds that under the noncompete covenant, as reformed, AmeriSpec has established a substantial likelihood that it will prevail on the merits.

B

AmeriSpec must next prove a substantial threat that it will suffer irreparable injury if the injunction is not granted.

"In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." *Am. Express Fin. Advisors, Inc. v. Scott,* 955 F.Supp. 688, 693 (N.D.Tex.1996) (Solis, J.) (citing *Ruscitto,* 777 F.Supp. at 1354). "[Section] 15.51(a) expressly makes available injunctive relief." *Ruscitto,* 777 F.Supp. at 1354. And the Holts expressly agreed in the Franchise Agreement that AmeriSpec had the right to temporary injunctive relief to enforce the agreement's noncompete provisions. *See* Agrmt. ¶ 18(01). AmeriSpec has established a substantial threat that it will suffer irreparable injury if the injunction is not granted.[FN10]

> FN10. Defendants argue that AmeriSpec cannot meet this requirement because it has not produced evidence that it will replace the Holts with a new franchisee for their former designated territory. The court disagrees. First, for the reasons explained above, AmeriSpec will suffer injury to the goodwill associated with its trademark. Second, the three existing Dallas/Fort Worth AmeriSpec franchisees were (and presumably still are) permitted under the Franchise Agreement to seek the business of customers in the Holts' former designated territory.

C

The third element of the test requires that AmeriSpec show that the threatened injury to it outweighs the threatened harm that the injunction may do to defendants. The court holds that it has. AmeriSpec has shown a substantial likelihood that it will suffer irreparable injury absent injunctive relief. Defendants will be restricted in their conduct, but from now through May 1, 2002 will be permitted to conduct their real estate inspection business throughout the Dallas/Fort Worth Metroplex, except within the Holts' former AmeriSpec designated territory and within ten miles of that territory. AmeriSpec has met this component. *See Ruscitto,* 777 F.Supp. at 1354.

D

AmeriSpec has satisfied the fourth element by showing that granting the preliminary injunction will not disserve the public interest. It is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed, *see* Agrmt. ¶ 18(01), and that is provided for by Texas law, *see* Tex. Bus. & Com.Code Ann. § 15.51(a) (Vernon Pamp. Supp.2001).

V

**\*7** Rule 65(c) provides that "[n]o ... preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The Franchise Agreement expressly provides, however, that "[t]he Franchisor shall be entitled without bond to the entry of ... temporary ... injunctions enforcing [the noncompete

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

clause]." Agrmt. ¶ 18(01). Defendants do not challenge this proviso in their briefing. Accordingly, the preliminary injunction that the court enters today does not require that AmeriSpec post a bond or other security. *See Helene Curtis v. Nat'l Wholesale Liquidators, Inc., 890 F.Supp. 152, 160 (E.D.N.Y.1995)* (enforcing post-injunction application waiver of bond requirement as part of agreement under which plaintiff waived limit on damages for which it could be held liable for wrongful injunction).

For the reasons set out, AmeriSpec's motion for preliminary injunction is granted in part and denied in part. A preliminary injunction is being filed separately.

SO ORDERED.

N.D.Tex.,2001.
Amerispec, Inc. v. Metro Inspection Services, Inc.
Not Reported in F.Supp.2d, 2001 WL 770999 (N.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.