1996 WL 165518
**(Cite as: 1996 WL 165518 (E.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

RITA'S WATER ICE FRANCHISE CORP.
v.
DBI INVESTMENT CORP. et al.

**No. 96-306**

April 8, 1996.

MEMORANDUM AND ORDER

SHAPIRO, J.

 *1 Plaintiff, Rita's Water Ice Franchise Corporation ("Rita's"), alleges breach of a franchise agreement by defendants DBI Investment Corporation, Scott Irrgang, and Denise Irrgang. Rita's avers that defendants breached the franchise agreement by using its proprietary marks and trade dress without authorization and by selling unauthorized products. Rita's motion for a temporary restraining order was denied as moot after a conference call with the parties. Rita's now seeks a preliminary injunction; a hearing was held on February 27, 1996. At the hearing, defendants agreed to discontinue the use of Rita's trademark and trade dress and agreed to an order so providing; the only remaining issue is the enforceability of the covenant not to compete contained in the franchise agreement. The parties submitted post-hearing memoranda on that issue.

 The court will order defendants to discontinue use of Rita's trademark and trade dress and grant Rita's motion for a preliminary injunction to enforce the covenant not to compete pending a decision or award pursuant to arbitration in accordance with the franchise agreement. The following are the court's findings of fact and conclusions of law.

FINDINGS OF FACT

 1. Rita's Water Ice Franchise Corporation ("Rita's") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business in the Eastern District of Pennsylvania. Rita's franchisees operate Rita's Water Ice shops along the northeast corridor through 71 franchised locations, five of which are located in Florida.

 2. Rita's is the owner of trade and service marks and has registered the marks in the United States Patent and Trademark Office. A Rita's franchisee is licensed to use the marks in the operation of its franchised business.

 3. DBI Investment Corporation is a corporation organized and existing under the laws of the State of Florida with a principal place of business in Jupiter, Florida.

 4. Scott and Denise Irrgang, citizens of Florida and the owners of DBI Investment Corporation, guaranteed the obligations of DBI Investment Corporation.

 5. On January 28, 1994, Rita's and DBI Investment Corp. entered into a franchise agreement granting defendants the right to operate a Rita's shop at 150 Indian Town Road, Jupiter, Florida, 33477.

 6. On October 21, 1994, Rita's and DBI Investment Corp. entered into a franchise agreement granting defendants the right to operate a Rita's shop at 1454 Tenth Street, Lake Park, Florida 33477.

 7. Each franchise agreement was signed in Philadelphia.

 8. Each franchise agreement is governed by Pennsylvania law and provides for venue in the Eastern District of Pennsylvania for preliminary injunctive relief and for enforcement of rights under the Lanham Act. Each franchise agreement provides that all other disputes, including permanent injunctive relief and damages, are to be arbitrated before the American Arbitration Association in Philadelphia. *See* Franchise Agreement, Articles XXI-XXIII.

 *2 9. Defendants began to operate each Rita's shop soon after signing the respective franchise agreements.

 10. Before opening the Rita's shops, defendants received training in the Rita's shop operation.

 11. Each franchise agreement contains a post-termination, noncompetition covenant stating that:
 For a period of eighteen (18) months following termination or expiration of this Agreement, or a partner or shareholder's interest in the franchise, regardless of the cause of termination, neither Franchisee nor such partner or shareholder shall

directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, partnership, corporation, or other unincorporated business, own, maintain, engage in, be employed by, or have any interest in any business specializing in whole or in part or in any way related to or connected with the frozen confection business within a radius of one and one half (1.5) miles of any System shop, including Franchisee's former Shop.

Franchise Agreement, Article XX.

12. Each franchise agreement requires that the franchisee sell only approved products and that "[a]ll containers, cartons, bags, napkins, and other paper goods and packaging used in the dispensing or sale of the water ice and other food or beverage products" bear the proprietary marks of Rita's; unapproved sources of supply are not permitted.  Article XI.E, G, and H.

13. Article XVIII.C of each franchise agreement authorizes Rita's to terminate the agreement without opportunity to cure if the franchisee fails to offer all required products and services, or if franchisee offers unauthorized products or services, or it franchisee fails to use the proprietary marks in the manner and for the purposes specified by the company.

14. Each franchise agreement requires the italian ice mix to be purchased only through Rita's designated supplier.  The franchise royalty is collected at the time the proprietary mix is purchased by franchisees from Rita's.

15. Rita's gave written notice of default on May 18, 1995 to DBI Investment Corporation for use of altered recipes and flavors.  The default was not cured.

16. On or about January 10, 1996, Dennis Gillen, a representative of Rita's, observed hot dogs cooking and advertised for sale and other unauthorized products on the premises.  Defendants were also using unauthorized product, ingredients, and flavors for sale of italian ice at defendants' Rita's shops.

17. The franchise agreements were terminated on February 9, 1996.

18. At the hearing, defendants agreed to change the name of their shops and remove all remaining Rita's trade dress, including a distinctive awning.

19. Defendants continue to operate the two former Rita's shops in a substantially similar manner as they did as Rita's franchisees, without Rita's service marks and logo.

20. Each franchise agreement provides that the good will arising from the use of Rita's proprietary mark belongs to Rita's and not the defendants. Franchise Agreement, Article VI.D.

**\*3** 21. Rita's had approved defendants' sites after conducting demographic and marketing studies; defendants' shops were located in target market areas for Rita's expansion.

22. Rita's has five franchises operating in Florida and has commitments from franchisees to open eighteen more units.

23. It would take eighteen months to establish another franchise operation in the Jupiter area, absent competition from defendants.

24. Marketing studies show that customers are drawn to a Rita's shop from a three mile radius.

25. Rita's financed extensive advertising in the market area of defendants' shops.

26. Rita's conducted marketing studies and shared the information it obtained regarding business developments, marketing strategies, and competition with its franchisees.

27. Defendants have not submitted financial statements to plaintiff as required under the franchise agreements.

28. Rita's estimates defendants' annual profits at $50,000 per shop.

29. Defendants introduced no testimony or other evidence that they would suffer harm if not permitted to operate a Rita's shop or business specializing in frozen confections within a 1.5 mile radius of defendants' former shops.

### DISCUSSION

On a motion for a preliminary injunction, the court must consider four factors:  (1) the likelihood that the applicant will prevail on the merits at the final hearing;  (2) the extent to which the movants are irreparably harmed by the conduct complained of;  (3) the extent to which defendants will suffer irreparable harm if preliminarily enjoined;  and (4) the public interest. *S & R v. Jiffy Lube International, Inc.,* 968 F.2d 371, 374 (3d Cir.1992). The franchise agreements are governed by Pennsylvania law.  Franchise Agreement, Article XXIII.

The plaintiff is likely to prevail on the merits at the final arbitration hearing.  An enforceable restrictive

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

covenant in the franchise context must satisfy three requirements: (1) the covenant must relate to either a contract for sale of goodwill or other subject property; (2) the covenant must be supported by adequate consideration; and (3) the covenant must be reasonably limited in both time and territory. *Piercing Pagoda, Inc. v. Hoffner,* 351 A.2d 207, 210 (1976) (citing cases). A franchisor has a protectible interest in the sale of a franchise because of expenditures made by a franchisor for market development and training, the grant of an exclusive sales area, and permission to use the franchisor's name. *Id.* at 211; *Sparks Tune-Up, Inc. v. White,* 1989 WL 41321 (E.D. Pa. April 18, 1989) (franchisor's interest in expertise, training, logo, name, advertising assistance, and exclusivity rights may be protected by covenant not to compete); *see Novus Franchising, Inc. v. Taylor,* 795 F.Supp. 122 (M.D.Pa.1992) (name and method of operation carries a quantum of value and goodwill). Here, plaintiffs introduced evidence of these factors sufficient to establish a protectible interest in the franchise. Adequate consideration exists for the restrictive covenant; the covenant was a condition to the original grant of the franchise, and defendant received the benefits of the franchise agreement as consideration.

**\*4** The restrictions of the covenant are appropriately limited in time and territory. Plaintiff's president, Robert Tumolo, testified credibly that eighteen months is the approximate length of time it would take to establish a new franchise in the area without competition from defendants. *See Novus* at 128 (time necessary to "seek, train, and bring up to speed replacement franchises" found reasonable); *see also Jiffy Lube International, Inc. v. Weiss Brothers, Inc. et al.,* 834 F. Supp. 683, 692 (D.N.J.1993) (adjusting length of time in restrictive covenant from three years to ten months to correlate with the time necessary for franchisor to set up a new franchise in the area). A time period of eighteen months is reasonable.

Rita's research revealed that customers were drawn from an approximate three mile radius. *See Piercing Pagoda,* 351 A.2d at 212 (covenant with thirty mile radius reasonably necessary for protection of the franchisor). A restriction to a radius of one and one half miles of any Rita's including defendants' former shops is reasonable.

The covenant is also reasonably limited in scope. The franchise agreement was for the operation of a business selling water ice and related products. The defendants received the benefit of Rita's expertise and the use of Rita's name in connection with the frozen confection business. Tumolo testified that "frozen confections" were the natural and anticipated product line sold by Rita's. Protection of the products for which the name and good will of Rita's has value is reasonable in the context of a covenant not to compete.

Rita's is irreparably harmed by defendants' violation of the franchise agreement. Rita's has an interest in the good will its franchise has created as well as an interest in being able to place a new franchise in the area as quickly as possible.

As stated in *Piercing Pagoda,* "[t]he covenant faces the economic reality that continued operation of [the former franchisee's] store subsequent to termination of the agreement would adversely affect the ability of the franchisor to secure another franchisee in the same territory." 351 A.2d at 212.

Defendants cite *In re: Arthur Treacher's Franchise Litigation,* 537 F.Supp. 311 (E.D Pa.1982), in support of their position that a preliminary injunction should be denied because Rita's is not in a position to refranchise in the area. However, the facts in *Arthur Treacher's* are distinguishable. There, the franchisor, involved in significant litigation with its franchisees, had recently terminated the licenses of over 200 stores; it was on the verge of bankruptcy. Here, another potential franchisee had expressed interest in the area of defendant's former franchise. Until the termination of the franchise agreement, defendants had territorial protection and development rights. Rita's has an interest in expansion and desires a presence in the market; competition from the former franchisee would lead to significant harm.

**\*5** Furthermore, the franchise agreements at issue are similar to the agreements signed with other franchisees. If plaintiff is unable to enforce this restrictive covenant against these defendants, the values of all its franchises are lowered. Other franchisees might violate their franchise agreements in similar ways and use Rita's good will to establish competing businesses.

Defendants did not appear at the hearing or present evidence but there is no doubt that the defendants will suffer some harm if a preliminary injunction is issued. However, the harm to defendants is of their own making. Defendants breached the terms of the franchise agreement by selling unauthorized products, using Rita's service marks and trade dress, and altering Rita's recipes. A preliminary injunction will not impose a hardship on defendants beyond that necessary to protect plaintiff's contractual interests. Moreover, enforcing the restrictive covenant does not force the defendants to go out of business at their present locations; defendants may still sell snack foods such as hot dogs, chips, and soda.

Although not heavily implicated in the instant case, the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

public interest supports contractual enforcement by preventing competition in violation of a valid restrictive covenant.

The court will grant Rita's relief in accordance with the terms of the attached order. The court orders the termination of the franchise agreements, and permanently enjoins defendants from violating the Lanham Act. Under the terms of the franchise agreements, the court has jurisdiction over the restrictive covenants only for purposes of considering preliminary relief. Franchise Agreement, Article XXI. Plaintiff has filed with the American Arbitration Association in Philadelphia; the arbitrator[s] will render a final decision on the merits.

The court will require plaintiffs to post a bond in the amount of $100,000, in accordance with the terms of Fed.R.Civ.P. 65(c), to cover potential damages suffered by defendants if they have been wrongfully enjoined. This amount is based on the plaintiff's estimate of defendants' annual profits at $50,000 per shop; defendants did not introduce any evidence regarding their profits.

Any facts in the Discussion section not set forth in the Findings of Fact are incorporated therein.

### CONCLUSIONS OF LAW

1. Defendants violated the franchise agreement by selling unauthorized products, using Rita's service marks and trade dress, and altering Rita's formulas.

2. Rita's is likely to succeed on the merits because the restrictive covenant relates to a protectible interest, is supported by consideration, and is reasonable in both time and territory.

3. Rita's will suffer irreparable harm if the covenant is not enforced; the established harm to Rita's outweighs the foreseeable harm to the defendants.

4. The public interest supports enforcement of the covenant.

An appropriate order follows.

### ORDER
AND NOW this 8th day of April, 1996 it is ORDERED that:

**\*6** 1) The franchise agreements are deemed terminated on February 9, 1996.

2) Pursuant to the Lanham Act, defendants are permanently enjoined from using the "Rita's Water Ice" and "Rita's Italian Ice" trademarks.

3) Pending the final award of the arbitrators, defendants, their officers, agents, employees, representatives, and all persons in active concert or participation with them are enjoined from operating a business specializing in frozen confections at or within 1.5 miles of 150 Indiantown Road, Jupiter, Florida, 33477, and at or within 1.5 miles of 1454 10th Street, Lake Park, Florida, 33477, for a period of eighteen months from the termination of the franchise agreement or a decision or award of the arbitrators, whichever is earlier.

4) The preliminary injunction is effective upon plaintiffs' posting a bond in the amount of $100,000 in accordance with Fed.R.Civ.P. 65(c).

5) The clerk is directed to mark this case administratively closed.

1996 WL 165518, 1996 WL 165518 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works