US-DIST-CT, BUSINESS FRANCHISE GUIDE ¶10,681, Dunkin' Donuts Inc. v. Shivem, Inc., et al. (Filed May 4, 1995)

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

The court has designated this opinion as NOT FOR PUBLICATION. Please consult the Rules of the Court before citing this case.

Dunkin' Donuts Inc. v. Shivem, Inc., et al.

U.S. District Court, District of New Jersey, Civil No. 94-5627 (CSF), Filed May 4, 1995.

**Preliminary Relief --Trademark Infringement --Post-Termination Use --Likelihood of Success -- Irreparable Harm --Balance of Harms --Public Interest. --**

A donut shop franchisee who had been terminated for failure to make timely payments was preliminarily enjoined from operating under the franchisor's name and trademarks. The franchisor was likely to prevail on its trademark infringement claim because its marks were valid and legally protectable, the terminated franchisee's continued use of the marks inevitably would cause consumer confusion, and the continued use was clearly unauthorized. Furthermore, the extreme likelihood of consumer confusion would irreparably harm the franchisor. Such harm outweighed any injury to the franchisee if it were enjoined from continuing to use the franchisor's marks, since any such injury would result from the franchisee's own refusal to comply with its contractual obligations and, therefore, could only be considered self-inflicted. An injunction alleviating any possible consumer confusion caused by the franchisee's continued use also was in the public interest.

Back references: ¶1100.30, ¶1100.38.

**Preliminary Relief --Enforcement of Noncompetition Agreement --Incident to Sale of Business -- Reasonableness of Terms --Two Years, Five Miles. --**

A terminated donut shop franchisee was preliminarily enjoined from owning, operating, or having any interest in any donut shop within a 5-mile radius of any of its former franchises or any of the franchisor's other outlets for a period of two years pursuant to the franchise agreement's noncompetition provision. Covenants not to compete in franchise agreements were considered incident to the sale of a business, rather than ancillary to an employment agreement, and therefore were enforced as long as the terms were reasonable. In this case, both the geographic scope and duration of the provision were reasonable and did not require judicial limitation. Moreover, without a preliminary injunction restraining the franchisee from continuing operations, the franchisor would clearly suffer harm to its goodwill.

Back reference: ¶845.

OPINION

[In full text]

FISHER, D.J.: On March 17, 1993, Shivem, Inc. and Hitendra Patel ("defendants") entered into a franchise agreement with Dunkin' Donuts, Inc., which authorized defendants to operate a donut shop at Route 9 and Alexander Avenue in Howell Township, New Jersey. On May 8, 1994, defendants entered into another franchise agreement with Dunkin' Donuts, Inc., by the terms of which defendants were licensed to operate a satellite location at 13 Lanes Mill Road in Lakewood, New Jersey, to be used strictly as a Dunkin' Donuts sales outlet. Under the terms of the agreements, defendants were granted the right to use the name "DUNKIN' DONUTS", a registered trademark, along with other proprietary marks owned by plaintiff. In exchange, defendants agreed to pay as a franchise fee to Dunkin' Donuts a sum equal to 4.9% of their gross sales, and to pay 5% of their gross sales as a contribution to the Dunkin' Donuts Franchise Owners Advertising and Sales Promotion Fund. Both agreements required that the franchise and advertising fees be paid by Thursday of each week, in conjunction

with the submission of weekly statements of gross sales covering the 7-day period ending at the close of business on the preceding Saturday.

On June 15, 1994, Dunkin' Donuts notified defendants that they were in default of their agreement for failure to submit the required sales statements and failure to make timely payments due under the agreement. Defendants were given an opportunity to cure the default, but did not do so. Accordingly, on July 28, 1994, Dunkin' Donuts sent defendants a written notice of termination of the franchise agreement. The written notice provided that termination would be effective 60 days after defendants received the notice of default, which, according to postal records, occurred on June 20, 1994.

Upon termination, the agreement provided that defendants shall promptly pay to Dunkin' Donuts all sums accrued prior to the termination, plus interest, as well as any damages, costs and expenses, including reasonable attorney's fees, incurred by Dunkin' Donuts by reason of defendants' default. Franchise and advertising fees in excess of $15,000 remain outstanding. Moreover, despite termination of its franchise agreement, defendants continue to operate the Dunkin' Donuts shop and the satellite sales outlet, using the "DUNKIN' DONUTS" name and other proprietary marks. Claiming that such unauthorized use of the marks is causing irreparable harm, Dunkin' Donuts seeks to enjoin defendants' infringement. Dunkin' Donuts also seeks to enjoin defendants' continued operation of its business pursuant to the post-termination restrictive covenant, which prohibits operation of a similar business for a period of two years after termination within a five-mile radius of defendants' former Dunkin' Donuts location or any other Dunkin' Donuts shop.

Although the entry of an injunction generally requires a hearing, a preliminary injunction may issue on the basis of affidavits and other written evidence, without the need for a hearing, if the evidence submitted does not leave unresolved any relevant factual issues. *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161 (3d Cir. 1982); *Professional Plan Examiners v. Lefante*, 750 F.2d 282 (3d Cir. 1984). In the present case, defendants have not submitted any evidence whatsoever in opposition to plaintiff's application for preliminary injunction [2]. Based upon the undisputed evidence submitted by plaintiff, the court finds that Dunkin' Donuts is entitled to a preliminary injunction to prevent the continued unauthorized use of its trademarks and to prevent defendants from operating their business in violation of the provisions of a covenant not to compete.

In ruling on a motion for a preliminary injunction, the court must consider four factors: (1) the likelihood that the applicant will prevail on the merits at the final hearing; (2) the extent to which the applicant is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *Opticians Ass'n v Independent Opticians*, 920 F.2d 187, 191-92 (3d Cir. 1990). Although it is almost always the case that the public interest will favor a plaintiff who has demonstrated both a likelihood of success on the merits and irreparable injury, courts should award preliminary injunctive relief only upon weighing all four factors. *AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427, n.8 (3d Cir. 1994).

### [Trademark Infringement]

To prevail on a claim for damages arising out of an alleged trademark infringement, a plaintiff must establish that the mark is valid and legally protectable, that plaintiff owns the mark and that the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services. *Opticians*, 920 F.2d at 192; *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992). In addition, where the defendant's previous use of the mark occurred with the plaintiff's permission, the plaintiff must also establish that the defendant's continued use of the mark was unauthorized. *S&R Corp.*, 968 F.2d at 375; *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1134 (D.N.J. 1993).

The validity of a registered mark and the registrant's ownership of the mark are proven when that mark is federally registered and has become incontestible under the Lanham Act. *Fisons Horticulture, Inc. v. Vigoro Indust. Inc.*, 30 F.3d 466 (3d Cir. 1994); *Pedi-Care Inc. v. Pedi-A-Care Nursing, Inc.*, 656 F. Supp. 449 (D.N.J. 1987). The mark in this case is registered and incontestible. In fact, when they entered into the franchise agreement, defendants expressly acknowledged that the name "DUNKIN' DONUTS" is registered as a trademark on the Principal Register of the United States Patent Office. (Bowman Certification, Ex. A at Introduction and ¶7.A.) Thus, there can be no dispute that Dunkin' Donuts owns the mark and the mark is legally protectable.

Regarding the third requirement, certainly "there is a great likelihood of confusion when an infringer uses the

exact trademark" as the plaintiff. *Opticians*, 920 F.2d at 195 (citing *U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981)). In the present case, defendants and Dunkin' Donuts are both using the same trademark, which is owned by Dunkin' Donuts. Thus, it is inevitable that there will be consumer confusion about defendants' relationship with the franchise. *See S&R Corp.*, 968 F.2d at 375.

Finally, it is readily apparent that defendants' continued use of the trademark is unauthorized. Initially defendants' use of the trademark was authorized pursuant to the terms of its franchise agreement with Dunkin' Donuts. That agreement gave Dunkin' Donuts the right to terminate the agreement in the event that the franchisee failed to cure any default arising out of the failure to timely remit required franchise fees or advertising contributions. Once plaintiff terminated the franchise agreement, based on defendants' failure to make the required payments, defendants were no longer authorized to use the mark.[3] This court concludes, therefore, that Dunkin' Donuts has adequately demonstrated a likelihood of success on the merits of its trademark infringement claim.[4]

In addition to establishing probability of success on the merits, Dunkin' Donuts must also demonstrate irreparable injury. Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will. *Opticians*, 920 F.2d at 195. Because of the potential damage to reputation and good will that can result from confusion surrounding an owner's marks, it has been held that where the plaintiff makes a strong showing of likelihood of consumer confusion, irreparable injury follows as a matter of course. at 195-96. Thus, since this court has already held that defendants' use of the Dunkin' Donuts marks creates the likelihood of confusion, it naturally follows that plaintiff has satisfied the irreparable injury requirement as well.

Next, the court must balance the hardships to the respective parties. For a preliminary injunction to issue, plaintiff must demonstrate that the grant of an injunction will create no greater harm for the defendants than denial of the injunction would create for the plaintiff. *S&R Corp.*, 968 F.2d at 379. There is no doubt that defendants will suffer harm because of their inability to continue in business as a Dunkin' Donuts shop. However, inasmuch as it was defendants' own refusal to comply with the obligations under their agreement which brought about the need for an injunction, any harm imposed by the issuance of an injunction must be considered self-inflicted and should not be the basis for denying injunctive relief. In a factually analogous trademark infringement case wherein the defendant continued to operate its business despite the termination of its franchise agreement due to underpayment of royalty fees, the court stated the principle as follows:

To the extent that the defendants suffer significant, and in a sense irreparable, damage from the granting of the preliminary injunction, this harm is a predictable consequence of their willful breach of contract and their misconduct. As such, it is not the type of harm from which we seek to protect a defendant. While a court fashioning an equitable remedy should not impose hardship on a defendant which exceeds that required to protect a plaintiff's legitimate contractual interests, the often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled.

*Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683 (D.N.J. 1993).

The final factor the court must consider is whether the grant of injunctive relief furthers the public interest. In a trademark case, there is a strong public interest in the protection of the trademark and in the prevention of deception of the public. *Opticians*, 920 F.2d at 197. Given the likelihood of confusion arising out of defendants' continued use of the Dunkin' Donuts trademark, it would be in the public interest to alleviate that confusion by enjoining defendants' continued infringement. Having satisfied all four factors necessary for the issuance of a preliminary injunction, plaintiff is entitled to the injunctive relief requested. Accordingly, pending further order of this court, defendants are restrained and enjoined from operating a Dunkin' Donuts shop at Route 9 and Alexander Avenue in Howell Township, New Jersey, or at 13 Lanes Mill Road in Lakewood, New Jersey. Defendants are also restrained and enjoined from using the DUNKIN' DONUTS tradename or any other proprietary marks owned by Dunkin' Donuts.

### [Enforcement of Noncompetition Agreement]

Notwithstanding that defendants are hereby enjoined from operating Dunkin' Donuts shops, plaintiff maintains that it would also be harmed by defendants' continued operation of a similar business, even if a different name is used. Plaintiff therefore seeks to enforce the restrictive covenant contained in the franchise agreement which prohibits operation of a similar business for a period of two years after termination within a five-mile radius of

defendants' former Dunkin' Donuts location or any other Dunkin' Donuts shop

Because a covenant not to compete in a franchise agreement is to be treated like a covenant incident to the sale of a business, rather than as a covenant ancillary to an employment agreement, this court will give deference to the parties' agreement and thus will enforce the restrictive covenant that is under consideration here. See *Jiffy Lube Int'l v. Weiss Bros., Inc.*, 834 F. Supp. at 691. Although the court has the power to limit the application of the covenant if the terms of such covenant are not reasonable with respect to duration, geographical scope or the extent of the activity restrained, see *Solari Indust. v. Malady*, 55 N.J. 571 (1970) and *Coskey's TV & Radio Sales v. Foti*, 253 N.J. Super. 626 (App. Div. 1992), the court finds that neither the 5-mile nor the 2-year provisions in

[3] Although defendants have not challenged the validity of the termination, such a dispute would not prevent this court from granting the preliminary injunction --a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor, and the franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated. *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992).

[4] In actuality, because default has been entered against defendants, plaintiff has prevailed on its trademark infringement claim. Nevertheless, there is always the possibility that the entry of default may be set aside for good cause shown. Therefore, the court has analyzed the case in terms of the likelihood of success on the merits.

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company