Page 1

1 of 1 DOCUMENT

LASON SERVICES, INC., et al., Plaintiffs, VS. STUART RATHE, et al., Defendants.

Civil Action No. 3:02-CV-2110-D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

2003 U.S. Dist. LEXIS 3947

March 14, 2003, Decided
March 14, 2003, Filed

**DISPOSITION:** [*1] Plaintiff Lason's motion for preliminary injunction granted in part and denied in part.

**COUNSEL:** For Lason Services, Incorporated, Lason Incorporated, PLAINTIFFS: John T Palter, Kenneth C Greene, Jr, Davis Munck, Dallas, TX USA.

For Lason Services, Incorporated, Lason Incorporated, PLAINTIFFS: Stephen K Postema, Lead Attorney, Bodman Longley & Dahling, Ann Arbor, MI USA.

For Stuart Rathe, Brian Rathe, DEFENDANTS: John R Urso, Urso Palmer & Ross, Detroit, MI USA.

For Stuart Rathe, Brian Rathe, DEFENDANTS: Nancy Patterson, Baker & Hostetler, Houston, TX USA.

For Stuart Rathe, Brian Rathe, DEFENDANTS: Nancy Phelps Patterson, Law Office of Nancy P Patterson, Addison, TX USA.

For Stuart Rathe, Brian Rathe, DEFENDANTS: Richard Matthew Kobdish, Jr, Lead Attorney, Fulbright & Jaworski, Dallas, TX USA.

**JUDGES:** SIDNEY A. FITZWATER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SIDNEY A. FITZWATER

**OPINION:**

MEMORANDUM OPINION AND ORDER

Plaintiffs Lason, Inc. and Lason Services, Inc. (collectively, "Lason") move for a preliminary injunction to prevent defendants Stuart and Brian Rathe (collectively, "the Rathes") from soliciting Lason's employees, competing with Lason, and using Lason's confidential [*2] information. n1 For the reasons that follow, n2 the court grants the motion to the extent that it enjoins the Rathes from using Lason's customer list, and it otherwise denies the motion.

   n1 Plaintiffs' preliminary injunction application is before the court under the procedure permitted by Fed. R. Civ. P. 43(e) and is being decided on the papers without an evidentiary hearing. See, e.g., Jones v. Bush, 122 F. Supp.2d 713, 715 (N.D. Tex.) (Fitzwater, J.), aff'd, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision), cert. denied, 531 U.S. 1062, 148 L. Ed. 2d 652, 121 S. Ct. 749 (2001).

   n2 The court sets out in this memorandum opinion and order its findings of fact and conclusions of law. See Rule 52(a).

I

In 1998 the Rathes and their brother sold their stock in Southern Microfilm Associates, Inc. ("SMA") to Lason pursuant to an Agreement for the Purchase and Sale of Stock ("Purchase Agreement"). Following the sale, Lason employed Stuart [*3] as a divisional vice president and

2004 U.S. Dist. LEXIS 3947, *3

Page 2

Brian as a divisional sales manager. The Rathes each signed an Employment Agreement that contained an agreement to refrain from competition and a noncompetition and non-solicitation clause. The agreement to refrain from competition contained in the Purchase Agreement provides:

> Agreement To Refrain From Competition. [The Rathes] hereby acknowledge that the Employment Agreements contemplated in Section 6.11 hereof are executed by them as a part of the inducement to Buyer to enter into this Agreement and to consummate the transactions contemplated herein. In connection therewith, [the Rathes] agree to refrain from competition and maintain confidential information concerning [SMA], [Lason] and its affiliates during the term of the Employment Agreements and for a 3 year period thereafter, all as set forth in the Employment Agreements, the terms and conditions of which are incorporated herein by reference. [The Rathes] further acknowledge that the Purchase Price given in consideration of the Shares is part of the consideration for them entering into said Employment Agreements and that they are receiving full and adequate consideration [*4] of their covenants and agreements provided therein.

Purchase Agreement § 9.1. The noncompetition and non-solicitation clause contained in each Employment Agreement stated:

> Non-Competition And Solicitation. In consideration of the compensation described in this Agreement, the economic benefits accruing to Employee under the Stock Purchase Agreement and as an inducement to Lason to consummate the transactions contemplated under the Stock Purchase Agreement, Employee agrees that for a period of time co-extensive with the term of this Agreement and for the three years following Employee's termination of employment with the Company, for whatever reason and whether or not pursuant to the terms of this Agreement (the "Non-Compete Period"), Employee shall not, either directly or indirectly (and whether or not for compensation), work for, be employed by, own, manage, operate, control, finance, participate or engage in, or have any interest in, any person, firm, entity, partnership, limited partnership, limited liability company, corporation or business (whether as an employee, owner, sole proprietor, partner, venturer, member, shareholder, officer, director, agent, creditor, [*5] consultant or in any capacity which calls for the rendering of personal services, advice, acts of management, operation or control) which engages in any activity substantially the same as or competitive with the Business, so long as the Lason Group shall, directly or indirectly, be engaged in such activity in the States of Louisiana, Texas, Arizona, Colorado, Nevada, Utah, New Mexico, neighboring States or anywhere in the United States in which the Lason Group is engaged in the business (the "Restricted Territory"). The foregoing shall not, however, be deemed to prevent Employee from owning, for investment purposes only, up to 2.5% of the securities of any corporation the shares of which are traded on a securities exchange or in the over-the-counter market.
>
> Employee further agrees that he shall not, directly or indirectly, at any time during the Non-Compete Period: (i) divert or attempt to divert from the Lason Group any work within the definition of the Business, whether or not in the Restricted Territory; (ii) solicit, contact, call upon or attempt to solicit, or provide services to, any of the Lason Group's customers, suppliers or actively sought potential customers or suppliers [*6] for the purpose of doing anything within the definition of the Business, or any work reasonably related to the Business, whether or not in the Restricted Territory; or (iii) induce or attempt to induce any person who is an employee or consultant

of the Lason Group to leave the employ of any affiliate of the Lason Group whether or not in the Restricted Territory.

Employment Agreement § 4(A). Each Employment Agreement also contained the following confidentiality clause:

> Confidentiality. Employee shall keep secret and inviolate and shall not divulge, communicate, use to the detriment of the Lason Group or for the benefit of any other person or persons or misuse in any way any knowledge or information of a confidential nature, including, without limitation, all trade secrets, information, computer programs, technical data, customer lists and unpublished matters relating to the business, assets, accounts, books, records, customers and contracts of the Lason Group which he may or hereafter come to know as a result of his association with or which is unique to the Lason Group[.]"

Employment Agreement § 4(B).

On July 22, 1999 the Rathes resigned their employment [*7] with Lason after dispute arose. As part of the termination of their relationship, the Rathes and Lason entered into a Settlement Agreement in which the Rathes reaffirmed the covenants of noncompetition and non-solicitation and confidentiality contained in the Purchase Agreement and the Employment Agreements. The Settlement Agreement contained the following reaffirmation agreement:

> Reaffirmation of Covenants Non-Competition and Confidentiality Covenants. By the execution of this Settlement Agreement, and for the good and valuable consideration set forth in the Purchase Agreement, the Employment Agreement and hereunder, [the Rathes] affirm that the non-competition and confidentiality covenants set forth in Section 9.1 of the Purchase Agreement and in Section 4 of the Employment Agreement remain in full force and effect in accordance with the terms set forth

herein and freely and knowingly agree to be bound by the terms and conditions thereof.

Settlement Agreement § 6. Accordingly, although the relevant noncompetition and non-solicitation clauses were effective for three years following the termination of the Rathes' employment with Lason, the confidentiality clause [*8] contained no such time limitation.

Lason maintains that, during the Rathes' employment with Lason, they obtained access to customer accounts, customer referrals, business information, strategic plans, employee information, and other confidential information, including information and records that revealed customer, employee, and business information. It alleges that in February 2001, after the Rathes resigned from Lason, Brian formed DocuData Solutions, Inc. ("DocuData"), a company that operates in Dallas at the former site of Lason's Dallas offices. Lason contends that Stuart is a co-owner or employee of DocuData. It maintains that DocuData is currently competing with Lason, has contacted and attempted to recruit three current Lason employees, has hired two former Lason employees, and has solicited, performed services for, or bid for the business of several Lason clients.

Lason sued the Rathes in the United States District Court for the Eastern District of Michigan in January 2002 seeking enforcement of contractual covenants not to solicit Lason's employees, to compete with Lason, and to use Lason's confidential information. Lason applied for a preliminary injunction to prevent [*9] the Rathes from competing with Lason in a contractually-prescribed restricted area, soliciting any Lason employee, customer, or supplier, and using, disclosing, or transmitting Lason confidential information. The Eastern District of Michigan entered a temporary restraining order ("TRO") against Stuart and Brian but deferred consideration of a preliminary injunction until it could determine whether the case should be dismissed or transferred under 28 U.S.C. § 1404(a). n3 In September 2002 the court transferred the suit to this district.

> n3 Plaintiffs contend the TRO is still in effect. The court disagrees. Based on its review of the pertinent materials, the court concludes that the Eastern District of Michigan intended that the TRO expire on the date of transfer to this court.

See Ps. App. 92 ("My notes tell me that it was my decision to continue the TRO until I could make a ruling on the motion to dismiss."). Even if the TRO has not expired, the court dissolves it today, in part as moot, because the court has granted a preliminary injunction, and in part on the merits.

[*10]

In October 2002 this court denied all pending motions for a temporary restraining order and/or preliminary injunction and directed the parties to comply with this court's local rules if they desired to seek such relief. Lason filed the required materials on January 14, 2003, and briefing concluded on February 21, 2003. n4

> n4 Two of the briefs are signed improperly. Rule 11(a) provides, in relevant part, that "every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party." Defendants' brief is signed "Nancy Patterson CDH." Ds. Br. at 16. Plaintiffs' reply brief is signed "John T. Palter by [initials]." Counsel are admonished to comply during the balance of this case and in other cases on this court's docket with the requirements of Rule 11(a).

II

To obtain a preliminary injunction, Lason must establish (1) a substantial likelihood that it will prevail on the [*11] merits, (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants, and (4) that granting the preliminary injunction will not deserve the public interest. *See Jones v. Bush*, 122 F. Supp.2d 713, 718 (N.D. Tex.) (Fitzwater, J.) (citing *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1353 (N.D. Tex.) (Fitzwater, J.), aff'd, 948 F.2d 1286 (5th Cir. 1991) (per curiam) (unpublished table decision)), aff'd, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision), cert. denied, 531 U.S. 1062 (2001). "A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'" *Id.* (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989), *Holland Am. Ins. Co. v. Successors of Rox*, 777 F.2d 992, 997 (5th Cir. 1985)). The decision to grant a preliminary injunction "is to be treated as the [*12] exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (stating that movant must "clearly carry the burden of persuasion").

III

The court considers first whether Lason has established a substantial likelihood that it will prevail on the merits of its noncompete and non-solicitation of customer and employees claims. Lason contends it has met this burden because the Rathes have admitted during discovery that they are competing with Lason and soliciting its customers and employees. It argues that these activities violate the noncompetition and non-solicitation provisions of the Purchase Agreement, Employment Agreements, and Settlement Agreement, that Lason's customers list and other confidential information are entitled to protection as a trade secret under Michigan law, and that the Rathes have no defenses to injunctive relief.

The Rathes contend, *inter alia*, that Lason cannot establish a substantial threat of irreparable injury because the noncompete and non-solicitation covenants at issue expired of their own terms on July 22, 2002, three years after the Rathes resigned their employment and executed [*13] the Settlement Agreement. n5 This argument is more logically analyzed under the rubric of substantial likelihood of success on the merits rather than as a challenge to Lason's ability to demonstrate a substantial threat of irreparable injury. If the covenants at issue have elapsed, Lason is not entitled to prevent the Rathes from competing with it or soliciting its employees and customers. Accordingly, the court will address the Rathes' argument in this context.

> n5 The Rathes' argument lacks merit to the extent it is addressed to Lason's claim based on § 4(B) of the Employment Agreements — which preclude the Rathes from divulging, communicating, or using Lason's confidential information — because, as the court has noted, that proviso does not contain a three-year limitation.

Citing two cases, Lason maintains that Michigan law n6 allows a court to extend the period during which a noncompetition agreement is in effect when doing so is necessary to afford equitable relief. See Ps. Rep. Br. at 2

n6 Lason maintains in the alternative that it is entitled to injunctive relief under Texas law. The Rathes cite both Texas and Michigan authorities and federal procedural standards to oppose injunctive relief, but they do not explicitly contend that Texas law controls over Michigan law. The court will apply Michigan substantive law in deciding Lason's application. In the single instance where the Rathes appear to rely exclusively on Texas law, see infra at § 4(A)(3), the court holds that the cases cited are inapposite.

[*14]

In *Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992), the Sixth Circuit applied Ohio, not Michigan, law. Id. at 511-13. Although the Michigan court of appeals cited *Basicomputer* in *Thermatool Corp. v. Borzym*, 227 Mich. App. 366, 575 N.W.2d 334 (Mich. App. 1998) (per curiam), for the proposition that courts have "concluded that such relief is permissible because the injury from a company's loss of good will can be difficult, if not impossible, to determine monetarily[,]" id. at 337, *Basicomputer* must be viewed as support for the relevant holdings of *Thermatool*, not as an independent exposition of Michigan law.

*Thermatool*, decided by a Michigan court of appeals, treated "the question whether a trial court may extend the terms of a noncompetition agreement as a remedy for breach of the agreement [as] an issue of first impression." Id. n7 The court of appeals concluded that, "in cases where a party has flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not provide for such relief in their agreement. [*15] " Id. at 338. It held that "a covenant not to compete may be extended where circumstances warrant[.]" Id. The circumstances that *Thermatool* appeared to recognize included: (1) where a party had flouted the terms of a noncompetition agreement, id.; (2) where money damages were not easily calculable, id.; and (3) where the breach had consisted of continuous and systematic activity in violation of the agreement, id. at 339. n8

n7 *Thermatool* appears to be the only Michigan case that analyzes whether an injunction extending the terms of a restrictive covenant is appropriate at the preliminary injunction stage, although such an injunction has once been granted by the Eastern District of Michigan in *Superior Consultant Co. v. Bailey*, 2000 U.S. Dist. LEXIS 13051, 2000 WL 1279161 (E.D. Mich. Aug. 22, 2000).

n8 Despite these general conclusions, the *Thermatool* court expressly held that the district court had abused its discretion by granting a preliminary injunction that extended the time period of the noncompetition agreement. Id. This was so "because, in granting the preliminary injunction, it granted plaintiffs the relief that they would be entitled to if they were to prevail in a trial on the merits." Id. The court also reversed the preliminary injunction on the ground that "courts have extended a covenant not to compete as a remedy for a breach [where] the breach has consisted of continuous and systematic activity in violation of the agreement." Id. The court was further concerned that granting a preliminary injunction in such circumstances "imposes an injury on defendants that cannot be undone if they should prevail at trial," although the court did leave open the possibility that such relief may be possible through a preliminary injunction. Id.

[*16]

The court holds that Lason has failed to demonstrate that the three-year period should be extended through a preliminary injunction. Lason has failed to demonstrate--to the degree necessary to persuade this court in equity to extend the expired agreements--that the Rathes have flouted the terms of the noncompetition and non-solicitation agreements, that money damages are not easily calculable, and that the Rathes' breaches have consisted of continuous and systematic activity. Based on the evidence that Lason cites in support of its injunction request, the Rathes' violations began in February 2001, slightly over half-way through the three-year period. The specific violations that Lason supports by evidence are of relatively small scale, with DocuData doing a fraction of the business that the much larger Lason does. The Rathes and DocuData have contacted and attempted to recruit four Lason employees and have hired an unquantified

Case 7:07-cv-06404-CLB    Document 6-17    Filed 07/19/2007    Page 6 of 8

Page 6
2003 U.S. Dist. LEXIS 1947, *16

number (only one is identified by name) of former employees. DocuData performs services for one specifically-identified Lason client (Children's Medical Center of Dallas), n9 has bid on the business of one customer (North Texas State Hospital), and has attempted, [*17] directly or indirectly, to get the business of Campbell Hospital, Baylor Hospital, and Xerox. The Rathes told another customer that they could do business after May 23, 2002 (approximately two months shy of the three-year expiration of the agreements). n10 Although Lason refers in its brief to Stuart's testimony that he has talked to 200 people about DocuData business, see Ps. App. 27, neither his testimony nor Lason specifically identify any Lason customer who was solicited. In sum, the specific conduct on which Lason relies in its brief consists of conduct involving recruitment of a handful of employees from a large corporation and competition from a defined number of customers. DocuData's competition has not been continuous and systematic throughout the three-year period, and Lason's loss of business from the few identified customers can be quantified in money damages. Accordingly, the court declines to extend by preliminary injunction the noncompetition and non-solicitation agreements that have already expired. n11

    n9 Lason asserts that DocuData has performed services for "Lason clients," Ps. Br. at 8, but identifies by name only Children's Medical Center of Dallas. It asserts that "Brian Rathe is currently soliciting other clients," id. at 12, but does not name any customers other than those whom the court identifies in this memorandum opinion.

[*18]

    n10 The testimony that Lason cites in support of the May 23, 2002 date also refers in the same sentence to July 23, 2002. See Ps. App. 15. Because Lason's appendix does not contain the prior deposition page, the court cannot determine the complete question and complete answer that refers to May 23, 2002. The court assumes, however, that Lason has fairly recounted the testimony.

    n11 Of course, nothing prevents Lason from

recovering via trial damages for violations of the covenants.

X

Lason seeks injunctive relief to prevent the Rathes from using confidential information. Although Lason refers generally to its records and customer information and to confidential information that it maintains is entitled to trade secret protection under Michigan law, the only specifically identifiable confidential information that Lason moves the court to protect is "Lason's customer list." Ps. Br. at 16. The court will therefore limit its analysis to whether an injunction should issue to prevent the Rathes from using Lason's customer list.

A

The court must first determine whether Lason has shown a [*19] substantial likelihood that it will prevail on the merits. Customer lists are entitled to protection under Michigan law and a breach may entitle a court to issue injunctive relief. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran*, 67 F. Supp.2d 764, 775 (E.D. Mich. 1999). Even absent an express agreement or covenant, a former employee is prohibited under the common law from using for his own benefit, and in competition with his former employer, trade secrets or confidential information that the former employer has given him or that he has acquired in violation of a duty. See *Superior Consultant* 2000 U.S. Dist. LEXIS 13051, 2000 WL 1279161, at *7 (citing *Hayes-Albion v. Kuberski*, 421 Mich. 170, 364 N.W.2d 609, 614 (Mich. 1984)).

Section 4(b) of the Employment Agreements obligates the Rathes to "keep secret and inviolate" and not to "divulge, communicate, use to the detriment of the Lason Group or for the benefit of any other person or persons or misuse in any way any knowledge or information of a confidential nature, including . . . customer lists[.]" The Rathes oppose injunctive relief, arguing that Lason has unclean hands, the Rathes have not misappropriated confidential [*20] information or trade secrets, Lason failed to safeguard its confidential information, and Lason has overstated the alleged solicitation of its customers and employees.

The court declines to deny injunctive relief based on

the Rathes' contention that Lason has unclean hands. Under Michigan law, "[T]he clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Stachnik v. Winkel*, 394 Mich. 375, 230 N.W.2d 529, 532 (Mich. 1975) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 89 L. Ed. 1381, 65 S. Ct. 993, 1945 Dec. Comm'r Pat. 582 (1945)). The Rathes maintain that Lason misled them concerning the value of the stock they received in Lason and the financial stability of the company, which subsequently revealed accounting irregularities and other questionable practices. They argue that gross mismanagement has led to bankruptcy and an investigation by the Securities and Exchange Commission. Assuming *arguendo* that the Rathes did not release [*21] these claims when they executed the Settlement Agreement, see Ps. App. 33, the evidence on which the Rathes rely to support their unclean hands argument, see Ds. App. 49-55, is insufficient to support a finding that Lason's conduct concerning the acquisition of SMA and post-purchase management of Lason is sufficiently inequitable or in bad faith that Lason should be denied equitable relief concerning use of its customer list.

Nor is it sufficient that Stuart and Brian may have been "systematically driven from their positions of employment with Lason and essentially excluded from a business they had worked in for most of their adult lives." Ds. Br. at 7. Regardless whether they were "systematically driven" from the company, at the time they resigned, the Rathes signed the Settlement Agreement in which they explicitly reaffirmed the confidentiality obligations of their respective Employment Agreements. The Rathes could have chosen not to settle and instead to contest their departures from Lason. They should not be permitted to abrogate collaterally this voluntary reaffirmation of their confidentiality obligations by relying on the doctrine of unclean hands.

2

In the relevant [*22] context of whether Lason is entitled to injunctive relief protecting use of its customer list, the court rejects the Rathes' contention that Lason has failed to identify with any specificity the trade secrets or confidential information that it contends they have taken or are currently using. Lason has specifically identified its customer list as being entitled to protection. See Ps. Br. at 16. The court also rejects the Rathes' contention that relief should be denied because the record fails to establish that either one of them took Lason documents or customer information when he left Lason's employment. The covenant prohibits the use of information contained in customer lists; a physical taking of a list need not have occurred.

The Rathes also maintain that "the identity of customers or potential customers in the data imaging and document management business is hardly confidential or secret as most any business may at some time have a need for such services." Ds. Br. at 9. Regardless whether the law would otherwise deem the identity of Lason's customers a trade secret that is protectable, the Rathes explicitly contracted in their Employment Agreements that they would not [*23] use Lason's customer list. In § 4(C) of each Employment Agreement, each defendant agreed that he had knowledge of Lason's "customers" and "potential customers" and acknowledged and agreed that compliance with the covenant of non-disclosure was necessary for the protection of Lason's business and its goodwill and other proprietary interests. They also agreed that any violation of the covenant would cause severe and irreparable injury to Lason. The Rathes have thus failed to show that Lason is not entitled to enforce this contractual restriction on the use of its customer list.

3

For the same reasons, the Rathes' contention that Lason has failed to safeguard its confidential information must fail. Assuming *arguendo* that Texas law applies, the Texas cases that the Rathes cite, see Ds. Br. at 10, are distinguishable, because no court refused to enjoin the use of a customer list that a defendant had explicitly contracted not to use. In *American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274 (Tex. App. 1988, no writ), the plaintiff sought protection of its customer cards on the basis that they were a trade secret under Texas law. *Id.* at 276-78. [*24] In *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18 (Tex. App. 1998, no writ), the former employees were not required to sign an agreement not to compete or a confidentiality agreement, *id.* at 24. The issue turned on the application of Texas common law, *id.*, and, although the court of appeals reformed the trial

Case 7:07-cv-06404-CLB   Document 6-17   Filed 07/19/2007   Page 8 of 8

Page 8
2003 U.S. Dist. LEXIS 3947, *24

court's injunction as overbroad, it affirmed the temporary injunction, *id.* at 25-26. In *Rogers v. Interactive Business Systems, Inc.*, 864 S.W.2d 548 (Tex. App. 1993, no writ), the trial court held that the noncompetition agreement between the plaintiff and defendant was unenforceable, *id.* at 550, but it granted a temporary injunction against, *inter alia*, use of customer information, *id.*, which the court of appeals affirmed based on Texas common law, *id.* at 551-53. Finally, *Gonzales v. Zamora*, 791 S.W.2d 258 (Tex. App. 1990, no writ), did not address the question whether an injunction to enforce a contractual obligation not to use a customer list must be denied if the content of the list was previously disclosed publicly or the [*25] information was generally known and readily available. Customer lists *per se* were not at issue. And when the *Gonzales* court modified on appeal the part of the injunction that prohibited the defendants from interfering with or soliciting the plaintiff's customers, it did so because the defendants had *not* signed a noncompetition agreement. *Id.* at 268.

4

Finally, because Lason has established that the Rathes are using Lason's customer list, *see, e.g.*, Ps. App. 8, 20, it is irrelevant whether Lason has allegedly overstated the alleged solicitation of its employees.

B

Having determined that Lason has demonstrated a substantial likelihood of success on the merits of its confidential information claim, the court next considers whether Lason has shown a substantial threat of irreparable injury.

Loss of goodwill qualifies as irreparable harm that can form a basis for injunctive relief. *See Merrill Lynch*, 67 F. Supp.2d at 779. Similarly, loss of fair competition can form a basis for a finding of irreparable harm. *See Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 847 (1994) (applying Michigan law). Additionally, in § 4(C) of each Employment [*26] Agreement, each defendant agreed to entry of an injunction under the circumstances presented here without the necessity of showing any irreparable injury:

> Remedies. Employee has had knowledge of the affairs, trade secrets, customers, potential customers and other proprietary information of SMA, which is now a part of the Lason Group, and Employee acknowledges and agrees that compliance with the covenants set forth in this Paragraph 4 is necessary for the protection of the Business, and the goodwill and other proprietary interests of the Lason Group and that *any violation of this Agreement will cause severe and irreparable injury to the Business, and the goodwill* and proprietary interests of the Lason Group, *which injury is not adequately compensable by money damages*. Accordingly, in the event of a breach (or threatened or attempted breach) of this Paragraph 4, any Lason Group member, in addition to any other rights and remedies, *shall be entitled to immediate appropriate injunctive relief* or a decree of specific performance, *without the necessity of showing any irreparable injury* or special damages.

Employment Agreement § 4(C) (emphasis added). [*27] Therefore, Lason has met its burden with respect to disclosure of its customer list.

C

The court finds that the threatened injury to Lason from the Rathes' disclosure of its customer list outweighs the threatened harm the injunction may do to the Rathes. An injunction will prevent the Rathes from using Lason's customer list to compete unfairly but will not prevent them from competing by lawful means without using the list.

D

Finally, granting a preliminary injunction will not disserve the public interest.

* * *

For the reasons set out, the court grants in part and denies in part Lason's motion for a preliminary injunction. By a preliminary injunction filed today, the court enjoins the Rathes from using Lason's customer list. Lason's motion for a preliminary injunction is otherwise denied.

**SO ORDERED.**