

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 396520 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ServiceMaster Residential/Commercial Services, L.P. v. Westchester Cleaning Services, Inc.
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
SERVICEMASTER RESIDENTIAL/COMMERCIAL SERVICES, L.P. and Sassne Enterprises, Inc. d/b/a ServiceMaster Associated Services, Plaintiffs,
v.
WESTCHESTER CLEANING SERVICES, INC. d/b/a ServiceMaster of Westchester; Michael A. Ceglio; and Robert P. Ritucci, Defendants.
No. 01 Civ. 2229(JSM).

April 19, 2001.

Michael Conway, Lazare Potter Giacovas & Kranjac, New York, NY, Michael Gray, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for plaintiffs.
John C. Gugliotta, Bronx, NY, for defendants.

*OPINION and ORDER*
MARTIN, J.
**\*1** Plaintiff Franchisor brings this application for a preliminary injunction against Defendant Franchisee for the purpose of preventing Defendant from operating under the ServiceMaster name and to enforce a non-compete clause contained in their franchise agreement during the pendency of this suit for trademark infringement and breach of contract. Since the application was brought, Defendant has consented to cease operation as ServiceMaster. The Court now addresses the issue of the enforceability of the non-compete clause.

In order to obtain a preliminary injunction, Plaintiff must demonstrate (1) either a likelihood of success on the merits or that serious questions exist and the balance of hardships tips in Plaintiff's favor, and that (2) Plaintiff will suffer irreparable harm in the absence of injunctive relief. See *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,* 25 F.3d 119, 122 (2d Cir.1994).

Plaintiff licenses franchises to perform disaster restoration and cleaning services under the ServiceMaster name. In December 1993, Plaintiff entered into the franchise agreement at issue here (the "Franchise Agreement") with Defendant. (Wills Aff. Ex. A.) Defendant received a non-exclusive license for operation as a ServiceMaster franchise in Westchester County, New York, and promised to devote itself to the cities of Yonkers, Scarsdale, and Eastchester.

Defendant was periodically delinquent in its obligations under the Franchise Agreement. For example, Plaintiff alleges that Defendant failed to pay its franchise fees for six months in 1994 and for eight months in 1996, and that a 1997 audit revealed that Defendant had underreported its gross sales, which allowed it to lower its franchise fees. (Comp.¶¶ 19-22.) Defendant charges in turn that Plaintiff did not live up to some of its obligations, such as promoting the home restoration business through national advertising.

On February 17, 1999, Plaintiff served Defendant with a franchise termination notice. (Wills Supp. Aff. Ex. A.) Although Defendant obtained an extension of time to meet its franchise obligations, it ultimately failed to make the payments that it owed. On July 19, 1999, Plaintiff served Defendant with a confirmation of franchise termination. (Wills Supp. Aff. Ex. C.) Plaintiff claims that in November 1999, in the course of ordering cleaning supplies, Defendant informed Plaintiff that it had never received the July termination notice. (Wills Supp. Aff. ¶ 7.) Plaintiff agreed at that time to grant Defendant additional time to cure its defaults. (Wills Supp. Aff. Ex. D.)

After a series of communications between the parties and additional attempts to bring Defendant into compliance with its back fees, on October 4, 2000, Plaintiff served Defendant with a second notice of termination that included a sixty-day period to cure the outstanding defaults. (Wills Supp. Aff. Ex. J.) When Defendant failed to meet its obligations, the Franchise Agreement terminated on January 4, 2001. At all times,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                        Page 2
Not Reported in F.Supp.2d, 2001 WL 396520 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendant continued to operate under the ServiceMaster name.

**\*2** Paragraph 15.3 of the Franchise Agreement contains a non-compete clause which provides that for a period of one year after the franchise's termination, Defendant is prohibited from owning or engaging in any business within Defendant's former territory that performs any of the services licensed by ServiceMaster. Defendant argues that the non-compete clause should not be enforced because the Franchise Agreement expired by its own terms in 1998, or alternatively because Plaintiff terminated the franchise on July 19, 1999, and thus one year from termination has already passed, and because enforcing the clause is unreasonable in these circumstances.

First, a question exists over the appropriate law to be applied to this claim. The parties profess uncertainty about whether New York or Tennessee law governs, and they decline to brief the issue. The Franchise Agreement contains a choice-of-law provision that calls for application of Tennessee law unless the franchisee's home state has enacted franchise legislation that requires that the home state's law apply to any disputes with the franchisor. (Wills Aff. Ex. A ¶ 24.1.) New York's Franchise Act contains no such provision. *See* N.Y. Gen. Bus. Law § 680 *et seq.* Under New York's choice-of-law rules, courts will honor a contractual choice-of-law provision if it bears a reasonable relationship to the dispute. *See LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc.,* 92 F.Supp.2d 119, 127 (E.D.N.Y.2000). Here, ServiceMaster's principal place of business is in Tennessee. Therefore, it appears from the documents currently before the Court that Tennessee law applies to this claim. In any event, the standards governing non-compete clauses applied by the two states are substantially similar.

The Franchise Agreement provided for a term of five years, subject to renewal for an additional five-year term if the franchisee met certain conditions. (Wills Aff. Ex. A. ¶ 2.) Most of these conditions were designed to protect the franchisor, for example, the requirement that the franchisee not be in default on its obligations. The parties submit no evidence of renewal when the Agreement expired in December 1998.

However, because they continued to operate as if the Franchise Agreement was in place, as evidenced by Plaintiff's notice of termination sent in February 1999 and Defendant's continued operation as a ServiceMaster franchise, the parties at a minimum impliedly agreed that the Franchise Agreement would continue to govern their relationship.[FN1] *See Hawes Office Sys., Inc. v. Wang Labs., Inc.,* 537 F.Supp. 939, 943 (E.D.N.Y.1982); 62B Am.Jur.2d *Private Franchise Contracts* § 517. Considered from another angle, Plaintiff waived Defendant's non-compliance with the conditions for renewal when it continued to behave as though the Franchise Agreement was in effect. *Cf. Freytag v. Crass,* 913 S.W.2d 171, 173 (Tenn.Ct.App.1995).

> [FN1.] Whether the parties impliedly agreed to renew for a term of five years, or whether the relationship was terminable at will, is a question the Court need not reach.

Defendant also argues that its franchise was terminated in July 1999, and that Plaintiff thereafter agreed to allow Defendant to continue using the ServiceMaster name while the parties resolved the issue of the missing back payments and negotiated a new franchise agreement. (Ceglio Aff. at 3.) The existence of such an oral agreement is contradicted by Plaintiff's letter of November 9, 1999, in which it states that Defendant will be given more time to cure its defaults or face termination. (Wills Aff. Ex. D.) ("We are willing to give you one final chance to bring your business into compliance or your rights will be terminated on December 1, 1999.") Similarly, Plaintiff's letter of March 14, 2000, warns that Defendant's franchise license is in imminent danger of being terminated. (Wills Supp. Aff. Ex. H.) Thus, Plaintiff's communications to Defendant indicate that Plaintiff elected to continue the Franchise Agreement despite the July 1999 termination notice. It is also worth noting that Plaintiff submits testimony that Defendant informed Plaintiff that the July termination notice was not received. (Wills Supp. Aff. ¶ 7.)

**\*3** While the existence of a possible agreement by Plaintiff to allow Defendant to operate as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 3
Not Reported in F.Supp.2d, 2001 WL 396520 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ServiceMaster while not actually maintaining franchise status raises a question of fact, it is undisputed that Defendant continued to operate as a ServiceMaster franchise until very recently. As such, Defendant accepted the benefits of franchise status and traded on the good will of Plaintiff. Although Plaintiff's letter to Defendant of November 30, 1999, anticipates that Defendant will sign a new set of contracts if it meets its financial obligations, the fact remains that the parties' relationship continued to be governed by the 1993 Franchise Agreement until that event occurred.[FN2] (Wills Supp. Aff. Ex. F.) Defendant should not be permitted to rely here on a July termination date that it ignored at the time and of which it later claimed never to have received notice. At this stage in the proceedings, it appears likely that the Franchise Agreement remained in effect until it was properly terminated by Plaintiff on January 4, 2001.

> [FN2.] Plaintiff stated at oral argument that a period of three years passed between the contractual expiration of the parties' previous franchise agreement and their renewal, which is the contract at issue here.

In order for a covenant not to compete to be enforced, it must pass a reasonableness test. New York and Tennessee courts will enforce a non-compete clause between business entities only where it protects a legitimate business interest and where its terms are reasonable both in time and geographic scope. *See DAR & Assocs, v. Uniforce Servs., Inc.,* 37 F.Supp.2d 192, 196-98 (E.D.N.Y.1999); *Carvel Corp. v. Eisenberg,* 692 F.Supp. 182, 185-86 (S.D.N.Y.1988); *Servpro Indus., Inc. v. Pizzillo,* No. M2000-00832-COA-R3-CV, 2001 WL 120731, at *6-7 (Tenn.Ct.App. Feb. 14, 2001). The party seeking to avoid the covenant must also demonstrate a lack of meaningful choice during the bargaining process. *See Carvel Corp. v. Rait,* 503 N.Y.S.2d 406, 410-11 (App.Div.1986).

In the franchise post-termination context, such covenants have been enforced where their scope is reasonably related to the protection of the franchisor's know-how and its ability to place new franchisees in the same territory. *See Eisenberg,* 692 F.Supp. at 186 (upholding three-year, two-mile restriction on ice-cream store); *Servpro,* 2001 WL 120731, at *7-8 (upholding two-year, twenty-five-mile restriction on restoration cleaning franchise). There is a recognized danger that former franchisees will use the knowledge that they have gained from the franchisor to serve its former customers, and that continued operation under a different name may confuse customers and thereby damage the good will of the franchisor. *See generally Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.,* 834 F.Supp. 683, 691-92 (D.N.J.1993) (upholding ten-month, five-mile restriction on rapid lube operation); *Economou v. Physicians Weight Loss Ctrs.,* 756 F.Supp. 1024, 1032 (N.D.Ohio 1991) (upholding one-year, fifty-mile restriction on diet center). This can be particularly true where the business operates out of the same location.

Defendant argues that ServiceMaster's technology is not as unique as it claims, and that three other ServiceMaster franchises already operate in the same territory. Thus, Defendant argues, ServiceMaster's interest in protecting its know-how and its ability to place another franchise in Westchester County is outweighed by the harm to Defendant if it is unable to establish another cleaning business for a period of one year. In addition, because a residential and commercial cleaning company differs from an ice-cream store in that the company goes to the customer, rather than vice versa, the chance of consumer confusion and damage to ServiceMaster's good will is less likely.

**\*4** Although these arguments have some merit, Defendant cannot reasonably dispute that when Plaintiff provided it with training and confidential manuals, Plaintiff extended to Defendant the knowledge and ability to launch a restoration cleaning business and that Defendant has used those tools to operate its business for fifteen years. In addition, the mere fact that Plaintiff has three other franchises operating in Westchester County does not mean that it does not have a legitimate interest in placing another; apparently there is enough business in the county to support four franchises. *See, e.g., Rait,* 503 N.Y.S.2d at 411 (finding irrelevant the fact that Carvel had the option to license another store one mile from the franchisee, where the non-compete

Not Reported in F.Supp.2d                                                                                                               Page 4
Not Reported in F.Supp.2d, 2001 WL 396520 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

clause covered two miles).

Although the nature of the business here requires that the company visit the customer's home or business, rather than vice versa, Plaintiff claims that many of their franchisees' clients are obtained through referrals from the insurance industry. As such, there is a danger that Defendant will seek to capitalize on relationships that it built as a ServiceMaster franchise, which may have the effect of harming the good will of Plaintiff and jeopardizing its ability to place a new franchise. The Tennessee Court of Appeals recognized this fact when it enforced a restrictive covenant against a restoration cleaning franchise and noted:

It is apparent that Servpro would have a more difficult time finding a new franchisee for the Fort Lauderdale territory if a former franchisee were performing the same services within that territory, while soliciting the same customers he previously serviced as a Servpro franchisee. The evidence suggests that the term "customers" should in this case refer not only to individual property owners for whom Servpro franchisees do restoration work, but also property managers, insurance agents and adjustors who are a major source of referrals for the restoration business.

*Servpro,* 2001 WL 120731, at [*]7.

Finally, Plaintiff does not argue that the restrictive covenant was not the product of a fair bargaining process. Therefore, because the time and geographic limitations appear to be reasonable, Plaintiff has demonstrated a likelihood of success on its claim to enforce the non-compete covenant.

Plaintiff must also demonstrate irreparable harm should injunctive relief be denied. Once again, the potential harm to Plaintiff arises from Defendant's ability to trade on the knowledge and customer relationships gained as a ServiceMaster franchise, which impacts on Plaintiff's good will and its interest in re-franchising the market. See *Jiffy Lube,* 834 F.Supp. at 692-93; *Economou,* 756 F.Supp. at 1039. In addition, the franchise system itself is endangered if a franchise is permitted to avoid its reasonable non-compete obligations. See *Jiffy Lube,* 834 F.Supp. at 693.

For the foregoing reasons, Plaintiff's application for a preliminary injunction to enforce the non-compete clause contained in the Franchise Agreement is granted. Defendant is hereby enjoined from engaging in the type of cleaning services offered by ServiceMaster until January 4, 2002, in the territory of Westchester County, except to the extent necessary to complete performance of existing contracts.

**\*5** SO ORDERED.

S.D.N.Y.,2001.
ServiceMaster Residential/Commercial Services, L.P. v. Westchester Cleaning Services, Inc.
Not Reported in F.Supp.2d, 2001 WL 396520 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.