LEXSEE 2000 U.S. DIST. LEXIS 18388

Caution
As of: Jun 27, 2007

DUNKIN' DONUTS, INC., and THIRD DUNKIN' DONUTS REALTY, INC., v.
GUANG CHYI LIU, SUSAN YEH LIU and G.C.S.L. Co., INC.

CIVIL ACTIONS No. 99-3344, No. 00-3666

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

2000 U.S. Dist. LEXIS 18388

December 21, 2000, Filed

**PRIOR HISTORY:** [*1] Adopting Magistrate's Document of November 20, 2000, Reported at: *2000 U.S. Dist. LEXIS 20694*.

**DISPOSITION:** Report and Recommendation APPROVED and ADOPTED. Plaintiffs' Motion for Preliminary Injunction GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff franchisor and plaintiff realty company moved for a preliminary injunction in plaintiffs' suit against defendant franchisees for breach of contract, trademark infringement, and unfair competition. The magistrate recommended that the court issue a temporary injunction against defendants, and defendants objected.

**OVERVIEW:** Plaintiff franchisor granted defendants a doughnut shop franchise, and plaintiff realty company leased property to defendants for the franchise. Plaintiffs filed suit against defendants, alleging that defendants breached the lease and franchise agreement by defaulting on the payments. Plaintiffs' action alleged claims for breach of contract, trademark infringement, and unfair competition. Plaintiffs moved for a preliminary injunction against defendants. The court approved the magistrate's report and recommendation and granted plaintiffs' motion for a preliminary injunction. Plaintiff franchisor established a likelihood of success on its breach of contract, trademark infringement, and unfair competition claims. Plaintiff franchisor also proved that irreparable injury pending litigation would result if relief were not granted. No other considerations weighed against the issuance of a preliminary injunction.

**OUTCOME:** Magistrate's report and recommendation was approved. Plaintiffs' motion for preliminary injunction was granted because plaintiff established a likelihood of success on the merits and irreparable injury and no other considerations weighed against the issuance of an injunction.

**LexisNexis(R) Headnotes**

*Civil Procedure > Judicial Officers > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Courts > Judges*
[HN1] *Fed. R. Civ. P. 72* governs objections to magistrate judges' orders, both dispositive and non-dispositive. In reviewing a magistrate judge's recommendation concerning a motion for preliminary injunction, a district court must make a de novo

determination upon the record of any portion of the magistrate judge's disposition to which specific written objection has been in accordance with this rule. *Fed. R. Civ. P. 72(b)*.

*Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > General Overview*
*Civil Procedure > Judicial Officers > Magistrates > Pretrial Orders*
[HN2] *Fed. R. Civ. P. 72(b)* requires that a party file its objections with the court 10 days after being served with a copy of the magistrate judge's recommended disposition. *Fed. R. Civ. P. 72(b)*. In computing these 10 days, an additional three days are provided if service was made by mail. *Fed. R. Civ. P. 6(e)*. Furthermore, Saturdays, Sundays and legal holidays should be excluded from the computation because the original time for service was less than 11 days. *Fed. R. Civ. P. 6(a)*.

*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
[HN3] In order to obtain a preliminary injunction, a plaintiff must prove that: (1) there exists a reasonable probability of eventual success on the merits; and (2) irreparable injury pending litigation will result if relief is not granted. The court should also take into account, when relevant: (3) whether there exists a possibility of harm to other interested persons from either the grant or denial of the injunction; and (4) the public interest in general.

*Trademark Law > Federal Unfair Competition Law > General Overview*
*Trademark Law > Infringement Actions > Burdens of Proof*
*Trademark Law > Infringement Actions > Determinations*
[HN4] With regard to its trademark infringement claims, a plaintiff must prove that: (1) the marks are valid and legally protectable; (2) it owns the marks; and (3) the defendant's use of the marks is likely to create confusion concerning the origin of the goods or services.

*Business & Corporate Law > Distributorships & Franchises > Franchise Relationships > Franchise Agreements*
*Business & Corporate Law > Distributorships &*

*Franchises > Terminations > General Overview*
[HN5] A franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor.

*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
[HN6] Injunctive relief of any kind is an extraordinary remedy that courts should only grant in limited circumstances. To obtain injunctive relief, a plaintiff must demonstrate potential harm that a legal or equitable remedy following trial would not adequately remedy. Pecuniary losses, without more, are not irreparable.

**COUNSEL:** For DUNKIN' DONUTS INCORPORATED, THIRD DUNKIN' DONUTS REALTY, INC., PLAINTIFFS: DAVID E. WORTHEN, STEVEN A. BROWNE, SCHMELTZER, APTAKER AND SHEPARD, P.C., WASHINGTON, DC USA. ROBERT L. ZISK, SCHMELTZER, APTAKER & SHEPARD, WASHINGTON, DC USA. JOHN J. JACKO, III, BUCHANAN, INGERSOLL, PHILA, PA USA.

For GUANG CHYI LIU, SUSAN YEH LIU, G.C.S.C.L. COMPANY, INC, DEFENDANTS: JEFFREY M. GOLDSTEIN, GOLDSTEIN & LOOTS, PC, WASHINGTON, DC USA. MATTHEW J. KREUTZER, GOLDSTEIN & LOOTS, WASHINGTON, DC USA.

**JUDGES:** JAMES McGIRR KELLY, J.

**OPINION BY:** JAMES McGIRR KELLY

**OPINION**

*MEMORANDUM AND ORDER*

**J. M. KELLY, J.**

Presently before the Court is a Motion for Preliminary Injunction filed by the Plaintiffs, Dunkin' Donuts, Inc. ("Dunkin') and Third Dunkin' Donuts Realty, Inc. ("Dunkin' Realty"). Plaintiffs filed suit against the Defendants, Guang Chyi Liu, Susan Yeh Liu and G.C.S.L. Co., Inc. ("Defendants") alleging breach of contract, trademark infringement and unfair competition. After conducting evidentiary hearings, Magistrate Judge Thomas J. Rueter issued a Report and Recommendation

that the Court issue a temporary injunction against Defendants. Defendants filed objections to that Report and Recommendation. For the following reasons, the Court will adopt and approve the Report and Recommendation of Magistrate Judge Rueter and grant Plaintiffs' Motion for a Preliminary Injunction.

## I. BACKGROUND

### A. Dunkin's Franchise System

Dunkin', a Delaware corporation with its principal place of business in Massachusetts, grants franchises to independent franchisees [*2] who operate Dunkin' Donuts shops throughout the United States and around the world. Dunkin' Realty is a wholly-owned subsidiary of Dunkin' that leases properties to Dunkin's franchisees. Franchisees, of whom there are 3,700 nationally and 4,700 globally, primarily sell doughnuts, pastries, coffee and related products. Franchisees are licensed to utilize trade names, service marks and trademarks of Dunkin' in the operation of these shops. [1] Franchisees also use specialty equipment, distinctive interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and information. The general public knows and recognizes Dunkin' Donuts marks, and associates them exclusively with Dunkin's products and services.

> 1   Dunkin' Donuts USA, Inc., a wholly-owned subsidiary of Dunkin', owns the trademark, servicemarks, and trade name "Dunkin' Donuts" and related marks. Dunkin' has the exclusive license to use these trade names and marks, and to license others to use them as well. Dunkin' has spent hundreds of millions of dollars to advertise and promote its marks.

[*3] B. *Defendants' Franchise Agreement with Dunkin'*

On March 31, 1995, Defendants obtained a Dunkin' franchise in Philadelphia, Pennsylvania. [2] As franchisees, Defendants were granted a license to use the Dunkin' trademark. In return, Defendants were obligated to pay certain fees to Dunkin'. Pursuant to their Franchise Agreement, Defendants were required to pay: (1) weekly franchise fees of 4.9 percent of their gross sales; (2) weekly advertising fees of 5.0 percent of their gross sales; and (3) interest on unpaid fees. Failure to make these payments in a timely manner would constitute a default under the Franchise Agreement. In the case of such a default, Dunkin' was required to give Defendants written notice and a seven day "cure period" within which to cure the default. Failure by Defendants to cure the default before the expiration of the cure period would allow Dunkin', upon written notice, to terminate the Franchise Agreement.

> 2   The original Franchise Agreement was dated November 27, 1990. Defendants acquired a franchise through an Agreement to Transfer.

[*4] The Franchise Agreement also contained many provisions relating to the continued use of trademarks after its termination. Specifically, the Franchise Agreement provided that: (1) "Upon any termination or expiration of this Agreement . . . Franchisee shall immediately cease to use . . . any methods associated with the name "Dunkin' Donuts," any or all of the Proprietary Marks [of Dunkin' Donuts]."); (2) "Any unauthorized use or continued use after the termination of this Agreement shall constitute irreparable harm subject to injunctive relief"; and (3) "Continued use by Franchisee of Dunkin' Donuts' trademarks, trade names, Proprietary Marks, and service marks after termination of this Agreement shall constitute willful trademark infringement by Franchisee."

### C. *Defendants' Lease*

On March 31, 1995, Defendants also obtained a lease to the property on which their franchise was located. [3] Dunkin' Realty acted as the landlord. Pursuant to the Lease, as amended, Defendants agreed to pay the following amounts to Dunkin' Realty: (1) monthly rent of $ 7,812.50; annual "percentage rent" in the amount by which twelve percent of the gross annual sales of their shop exceeded a specified [*5] annual base rent; [4] and (3) all real estate and other taxes relating to the premises, to be paid in monthly installments of 1/12 of the estimated annual real estate tax. If Defendants failed to make a timely payment, Dunkin' Realty could provide them with a written Notice to Cure. Failure to cure the default within ten days of such notice would entitle Dunkin' Realty to terminate the Lease. Dunkin' Realty could also terminate the Lease if the Franchise Agreement were terminated.

> 3   The original lease was entered into on March 6, 1986. Defendants assumed the right, title and

interest in that original lease pursuant to their Agreement to Transfer.

4  Any outstanding amount of percentage rent was to be paid within fifty days of the end of the lease year.

D. *The Alleged Breach of the Lease and Franchise Agreement*

As of June 21, 2000, Defendants owed Dunkin' and Dunkin' Realty total of $ 43,161.99. Of this total, $ 13,654.07 was for a year-end percentage rent charge under the Lease. [5] On June 22, 2000, Dunkin' [*6] promptly served Defendants with a Notice of Default and Notice of Cure letter.

> 5  Despite paying this amount in years past, and receiving an invoice in April, 2000 that explained the calculation of this charge, the Defendants claim that they were confused as to the source of this fee. Defendants also claimed to have serious difficulty speaking English or understanding simple business transactions. At a September 18, 2000 hearing, however, it was revealed that Ms. Liu had been employed as a full time nurse for fourteen years, was certified in oncology, and did not need an interpreter while at work. Moreover, Mr. Liu was a doctoral candidate at the University of Pennsylvania prior to their purchase of the Dunkin' Donuts franchise.

Defendants did not cure these defaults. [6] Defendants claimed to have sent checks to Dunkin' in May, 2000. Pursuant to Dunkin's standard business practice, Defendants would always send their checks to a lockbox in North Carolina, from which the checks would be deposited in a bank within [*7] twenty-four hours of their receipt. Dunkin's bank did not receive the checks, dated May, 2000, until late in July. Defendants later admitted that they backdated the checks as part of a record keeping procedure. By July 12, 2000, Dunkin' served Defendants with a Notice of Termination of their Franchise Agreement with Dunkin' and their Lease with Dunkin' Realty.

> 6  In fact, by July 10, 2000, Defendants' deficiencies had grown to $ 46,257.50.

Defendants refused to accept the termination of the Franchise Agreement and Lease, and continue to hold themselves out to the public as Dunkin' franchisees. Dunkin' filed suit in this Court, alleging breach of contract, trademark infringement and unfair competition. On July 20, 2000, Dunkin' filed a Motion for Preliminary Injunction that sought to enjoin Defendants from further use of the Dunkin' Donuts trademarks and trade names and require them to vacate their franchise property. After conducting hearings on the matter, the Honorable Magistrate Judge Thomas J. Rueter issued [*8] a Report and Recommendation on November 20, 2000, to which Defendants objected on December 11, 2000.

## II. *STANDARD OF REVIEW*

[HN1] *Federal Rule of Civil Procedure 72* governs objections to magistrate judges' orders, both dispositive and non-dispositive. In reviewing a magistrate judge's recommendation concerning a motion for preliminary injunction, a district court must "make a de novo determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been in accordance with this rule." *Fed. R. Civ. P. 72(b)*; see also *28 U.S.C. 636(b)(1)(C)*. [7]

> 7  [HN2] *Rule 72(b)* requires that a party file its objections with the Court ten days after being served with a copy of the magistrate judge's recommended disposition. *Fed. R. Civ. P. 72(b)*. In computing these ten days, an additional three days are provided if service was made by mail. *Fed. R. Civ. P. 6(e)*. Furthermore, Saturdays, Sundays and legal holidays should be excluded from the computation because the original time for service was less than eleven days. *Fed. R. Civ. P. 6(a)*. Under this standard, Defendants should have served the Court with their objections by December 8. Defendants filed their objections, however, on December 11. The Court will nevertheless overlook this error as it appears that their mistake was caused by their belief that the day following Thanksgiving should be excluded from the calculation as well. *Fed. R. Civ. P. 6(b)*.

[*9] III. *DISCUSSION*

A. *Objections to The Magistrate's Findings of Fact*

Although Defendants make several objections to the Magistrate's Findings of Fact, none of them actually objects to an actual finding of fact or inference drawn therefrom. Instead, Defendants object to the effect of the legal principles applied by Magistrate Judge Rueter. For

Case 7:07-cv-06404-CLB  Document 6-21  Filed 07/19/2007  Page 5 of 7

Page 5
2000 U.S. Dist. LEXIS 18388, *9

example, Defendants object to the finding that the Franchise Agreement contains agreements concerning the continued use of Dunkin's proprietary marks after the termination of the agreement. While it is clear that the Franchise Agreement contains these agreements, Defendants object because they did not understand the language of the contracts and Dunkin' did not explain them to Defendants. Defendants similarly object to the finding that they defaulted on their payments. Defendants concede that the breach occurred, but suggest that the breach be excused because, in their opinion, Dunkin' breached an implied duty of cooperation to them. The merits of these objection aside, they are not objections to findings of fact. Because these objections are more properly characterized as objections to conclusions of law, the Court will adopt [*10] the Magistrate's findings of fact and discuss Defendants' objections in its discussion of the merits of Dunkin's motion.

B. *Objections to the Magistrate's Conclusions of Law*

[HN3] In order to obtain a preliminary injunction, a plaintiff must prove that: (1) there exists a reasonable probability of eventual success on the merits; and (2) irreparable injury pending litigation will result if relief is not granted. *Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994)*. The Court should also take into account, when relevant: (3) whether there exists a possibility of harm to other interested persons from either the grant or denial of the injunction; and (4) the public interest in general. *Id.*

1. *Likelihood of Success on the Merits*

Dunkin' has established a likelihood of success on its breach of contract, trademark infringement and unfair competition claims. [HN4] With regard to its trademark infringement claims, Dunkin' must prove that: (1) the marks are valid and legally protectable; (2) it owns the marks; and (3) the defendant's use of the marks is likely to create confusion concerning the origin of the goods or services. *Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990)*. [*11] Defendants do not dispute that Dunkin' has standing to assert a claim for trademark infringement or that its marks are valid and legally protectable. [8] Moreover, Defendants' continued use of Dunkin's trademarks after Dunkin' terminated the Franchise Agreement will clearly lead to confusion among the shop's customers that its proprietors are still affiliated with Dunkin'. *S & R Corp. v. Jiffy Lube Intl., Inc., 968 F.2d 371 at 375*.

> 8 Dunkin' has standing to assert a trademark infringement case because it holds the exclusive license to the marks held by Dunkin' Donuts USA, Inc., its wholly-owned subsidiary.

Dunkin' has also established a likelihood of success on the merits of its claim for breach of contract. The Franchise Agreement between Dunkin' and the Defendants provides that, upon Defendants' failure to pay their financial obligations, Dunkin' could provide them with written notice that they should cure the problem. If the Defendants failed to cure the problem within the applicable period, Dunkin' could consider the [*12] Franchise Agreement breached and, upon written notice, terminate it. Defendants failed to make timely payments, Dunkin' gave them an opportunity to cure that default and Dunkin' appropriately terminated the Franchise Agreement.

Defendants posit two reasons why their late payments do not constitute a breach of the Franchise Agreement. First, they assert that Dunkin's acceptance of late payments in the past constitutes a waiver of the provision in the Franchise Agreement that requires timely payment. This argument lacks merit because the Franchise Agreement itself expressly states that Dunkin's acceptance of late payments does not constitute a waiver of Dunkin's rights under the agreement. Defendants contend, however, that the anti-waiver clause is unconscionable in its application to them because they have difficulty speaking English and Dunkin' did not explain the clause to them. Defendants fail to provide the Court with any case law that supports their position. Moreover, the Magistrate Judge had ample opportunity to observe the Defendants during their testimony. Given his finding that Defendants' claims of difficulty with the language and lack of business savvy were "less than [*13] credible," Defendants' argument that the anti-waiver clause is unconscionable as applied to them is unpersuasive.

Second, Defendants assert that their failure to pay was caused by Dunkin's intentional breach of their implied duty of cooperation under the Franchise Agreement. Assuming without deciding that such a duty exists and Dunkin' breached that duty, such a breach by Dunkin' would neither relieve Defendants of their duty to meet their financial obligations nor prevent Dunkin' from

Case 7:07-cv-06404-CLB   Document 6-21   Filed 07/19/2007   Page 6 of 7

Page 6
2000 U.S. Dist. LEXIS 18388, *13

terminating the Franchise Agreement. [HN5] Because a franchisor's right to terminate a franchisee "exists independently of any claims the franchisee might have against the franchisor," *S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir. 1992)*, Defendants can assert their own claim against Dunkin' but cannot rely on Dunkin's wrongdoing to avoid the consequences of their own non-performance. [9]

> 9 Defendants contend that *S & R Corp.* does not apply in this case because Dunkin's conduct, irrespective of whether that conduct is a breach of the Franchise Agreement, prevented Defendants from performing their financial obligations. Specifically, Defendants claim that Dunkin' instituted the present action in bad faith, in an intentional attempt to divert Defendants' resources to litigation rather than meeting their financial obligations. The Court disagrees. Defendants cite no controlling case law in support of their argument. Moreover, given that the Court finds Dunkin' has a likelihood of success on the merits of its claims, an argument that Dunkin' instituted its action in bad faith is less than persuasive.

[*14] 2. *Irreparable Injury*

[HN6] Injunctive relief of any kind is an extraordinary remedy that courts should only grant in limited circumstances. *Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989)*. To obtain injunctive relief, a plaintiff must demonstrate potential harm that a legal or equitable remedy following trial would not adequately remedy. *Id. at 801*. Pecuniary losses, without more, are not irreparable. *Acierno, 40 F.3d at 653*. Although the instant case does involve pecuniary loss, Dunkin' has also established other injuries that would be irreparable. For example, because Defendants continue to use Dunkin's marks after Dunkin' terminated the Franchise Agreement, Dunkin' will lose control of its reputation, trade and goodwill among its customers. *See, e.g., S & R Corp, 968 F.2d at 377*. These damages are sufficiently irreparable even in the absence of potential health, safety or sanitation concerns raised by Defendants' continued operation using Dunkin's marks. Moreover, the Franchise Agreement itself states that use of Dunkin's marks in such a manner would constitute irreparable injury.

[*15] 3. *Balancing of Harms and the Public Interest*

No other considerations weigh against the issuance of a preliminary injunction in this case. While it is true that Defendants will be harmed if their franchise is terminated, this harm is merely pecuniary, and thus remediable by money damages. *See, e.g., S & R Corp., 968 F.2d at 379; Central Jersey Freightliner, Inc. v. Freightliner Corp., 987 F. Supp. 289, 296 (D.N.J. 1997)*. [10] These damages do not outweigh the irreparable damages that Dunkin' will suffer if the Court does not issue a temporary injunction. Moreover, any damage to Defendants would stem directly from Defendants' own failure to pay their financial obligations to Dunkin'. *S & R Corp., 968 F.2d at 379*. Furthermore, issuing an injunction in this case would further the public's interest in avoiding the confusion caused by a former licensee's use of a license without the licensor's permission. *Id.; Opticians Ass'n of America, 920 F.2d at 197*. Accordingly, Dunkin' has established a likelihood of success on the merits and the threat of irreparable injuries, which justifies issuing a preliminary injunction [*16] in its favor.

> 10 Defendants cite *LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc., 92 F. Supp. 2d 119, 131 (E.D.N.Y. 2000)* for the proposition that the termination of a franchise can constitute irreparable harm to the franchisee. To the extent that this case is controlling, the Court finds it distinguishable on its facts. For example, the franchisee in *Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir.1970)*, on which *LaGuardia* relies, had been operating his franchise for over twenty years. The Defendants have only had their franchise for five years. *See, e.g., Truglia v. KFC Corp., 692 F. Supp. 271, 279 (S.D.N.Y. 1988)* (holding that life span of eight-month franchise was not enough to give rise to irreparable injury upon its termination).

### ORDER

**AND NOW**, this        day of December, 2000, in consideration of the Motion for Preliminary Injunction filed by the Plaintiffs, Dunkin' Donuts, Inc. and Third Dunkin' [*17] Donuts Realty, Inc. (Doc. No. 2), the Report and Recommendation of United States Magistrate Judge Thomas J. Rueter, and the Objections to Magistrate Rueter's Report and Recommendation for Preliminary Injunction filed by the Defendants, Guang Chyi Liu, Susan Yeh Liu and G.C.S.L. Co., Inc. (Doc. No. 24), it is

**ORDERED** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**.

2. Plaintiffs' Motion for Preliminary Injunction is **GRANTED**.

3. Defendants shall cease all use of Dunkin' Donuts proprietary marks and information and any methods associated with the name "Dunkin' Donuts" no later than twenty (20) days from the date of this Order.

4. Defendants shall deliver possession of the premises 5100 City Line Avenue, Philadelphia, Pennsylvania 19145, to an authorized representative of Plaintiff Third Dunkin' Donuts Realty, Inc., no later than thirty (30) days from the date of this Order.

BY THE COURT:

JAMES McGIRR KELLY, J.